Charles W. Williams v. Commissioner.
Williams v. Commissioner
Docket No. 27181.
United States Tax Court
T.C. Memo 1954-199; 1954 Tax Ct. Memo LEXIS 45; 13 T.C.M. (CCH) 1053; T.C.M. (RIA) 54305; November 24, 1954, Filed *45 Lester R. Uretz, Esq., and Frederick T. Carney, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: This proceeding involves deficiencies in income tax and penalties as follows: [1]
50%
25%
Year
Deficiency
Penalty
Penalty
1942
$2,382.21
$1,191.10
$595.55
1943
2,278.53
1,139.27
569.63
1944
172.00
86.00
43.00
1945
222.00
111.00
55.50
1946
2,227.51
1,113.76
1947
3,434.80
1,717.40
858.70
There was no appearance for petitioner at the hearing held herein, at which we granted an oral motion of respondent to dismiss the proceeding in so far as it related to the deficiencies and delinquency penalties for failure to properly prosecute. Such action leaves for decision only the question of whether the fraud penalties were properly imposed. Findings of Fact Petitioner, during the taxable years was a resident of Wilsonville Alabama. He did not file income tax returns for the years 1942 to 1945, inclusive. Petitioner and his wife filed a joint return for 1946, and he filed an individual *46 income tax return for 1947. Each return was filed with the collector of internal revenue for the district of Alabama. Petitioner had the equivalent of two years of college education and was a graduate in higher accounting of the LaSalle Extension University, Chicago, Illinois. Petitioner was chief of the appraisal and loan division of the Federal Land Bank of New Orleans, Louisiana, for eight years during the period from 1927 to 1937. During the years 1939 to 1941, inclusive, he was vice president and general manager of J. F. Pope Company, Inc., a corporation engaged in the sale of general merchandise and Chevrolet automobiles in Wilsonville, Alabama. During the taxable years petitioner did business in and around Wilsonville under the trade name of J. F. Pope Company. His businesses included a general store in which he sold groceries, dry goods, hardware, shoes, meat, gasoline and tractors, and an agency for the sale of new Chevrolet automobiles and parts, which, with a service department, he operated under the name of Shelby County Motor Company. In addition thereto he owned and operated a grist mill and several farms. In the spring of 1946, petitioner, in response to a request *47 of deputy collectors for books recording his operations, produced some loose leaf ledger sheets, some checks and memoranda. Later, upon demand that other records, if any, be submitted, petitioner presented to them books showing purchases, sales and inventories of a portion of the activities of the general store. He also had a journal in which incomplete entries were made. In addition to the records so produced, petitioner's wife maintained a small book in which she made a record each day of receipts and disbursements of the dry goods and grocery departments of the general store, which she managed. The book disclosed sufficient income in 1942 to 1945, inclusive, to require the filing of returns. The book was at times delivered to petitioner's bookkeeper for consolidation of her records with those for other branches of petitioner's business. The deputy collectors determined that petitioner's wife had sufficient income during the years 1942 to 1945, inclusive, to require the filing of returns. They prepared returns in her name for those years but she never signed them. Petitioner was aware of statutory provisions requiring individuals to file income tax returns if they had gross income *48 in excess of a specified amount. Petitioner's automobile agency agreement required him to render monthly financial statements to the General Motors Corporation from a system of books which were uniform among all Chevrolet dealers. Petitioner acquired forms to keep such books, but did not keep the books or render the financial statements to the General Motors Corporation as required by his contract. Petitioner employed a bookkeeper to keep books of account. His books and records were inadequate to reflect his income for the taxable years. On June 10, 1947, petitioner rendered a statement to a bank showing the value of his assets and his indebtedness at the close of 1929, 1932, 1936, 1942 and 1946, and net worth on January 6, 1947. The statement reported net worth on January 6, 1947, in the amount of $67,025 and an increase of about $34,000 in net worth, based on value, during the four-year period ended December 31, 1946. A statement rendered to the same bank on March 12, 1948, reported a "BALANCE SHEET NET WORTH, Jan. 1st, 1948" of $70,210.30. In October 1947, petitioner represented to the Chevrolet Motor Division of General Motors Corporation that his "Balance Sheet Net Worth" *49 on October 27, 1947, was $75,335.62. On June 29, 1948, he denied under questioning by special agents that he had ever furnished financial statements to others for the taxable years. On December 27, 1946, petitioner submitted to the collector of internal revenue a statement showing assets and liabilities at the close of the years 1941 to 1945, inclusive, based on book value, as follows, cents omitted: 1941
1942
1943
1944
1945
Assets
$49,355
$72,333
$72,533
$65,451
$69,663
Liabilities
22,289
42,374
31,415
33,897
35,224
Petitioner made a notation on the statement that the figures therein were based upon an incomplete audit and requested permission to file another report based upon a complete audit. An effort was made by the respondent to determine the assets and liabilities of petitioner at the close of 1941 and the taxable years, in connection with which he considered the financial statement prepared by petitioner. Except for a difference of about $400 in liabilities, the starting net worth statement prepared by respondent agrees with the incomplete financial statement rendered by petitioner. Figures appearing in petitioner's statement *50 were used by respondent, unless his examination disclosed that they were incorrect, in which event he made adjustments. The joint return filed for 1946 reported net profit of $5,044.68 from the operation of the general store, $138.50 of taxable interest, a loss of $4,300.04 from farm operations, and profit of $132.10 from rents and royalties, and no tax liability. A notation was made on the return that it was "filed tentatively" and that an amended return would be filed within 30 days. The return filed for 1947 reported net income of $4,204.58 and tax liability of $443. The deficiencies were determined by the net worth method which disclosed that the increase or decrease in petitioner's net worth each taxable year, excluding living expenses, was as follows: Year
Amount
1942
$ 7,253.57
1943
6,402.11
1944
1,954.48 *
1945
1,724.62 *
1946
6,831.61
1947
10,758.81
The living expenses of petitioner were $4,000 in each of the years 1942 and 1943 and $4,800 in each of the subsequent taxable years. Opinion Petitioner having failed to appear in person or by counsel at the hearing, all of the evidence on the issue of fraud, the only question *51 now before us, was presented by respondent in support of his burden of proof. No returns were filed for the years 1942 to 1945, inclusive. The joint return filed for 1946 disclosed no tax liability, and the individual return filed by petitioner for 1947 reported tax liability of $443. Respondent asserts on brief that the failure of petitioner to keep and preserve adequate accounting records for income tax purposes, despite his qualifications to do so; his knowledge of net income, as shown by financial statements rendered by him, sufficient to require the filing of returns, and an alleged remark that he would not file returns unless he was compelled to do so, disclose a deliberate and planned attempt to evade payment of income taxes. Petitioner filed a voluminous reply brief under his own signature, in which allegations of fact are frequently relied upon as a basis for discussion and conclusions. Facts not supported by evidence introduced at the hearing are not before us and can not, therefore, be considered as forming any part of the record. Some of the facts of record to which we are confined contain a strong indication of fraud with intent to evade tax, but a careful analysis *52 of such evidence in the light of other circumstances reveals its weakness under the burden respondent had to prove his case by clear and convincing evidence. The deficiencies and deliquency penalties were sustained solely because of the failure of petitioner to appear at the hearing to properly prosecute. The dismissal of the proceeding, except for fraud, for such cause created no presumption or inference of fraud, and did not relieve respondent of his full burden of proof, including the receipt of income subject to tax. The respondent had ample justification for resorting to the net worth-expenditure method of determining income tax liability. The inadequacy of petitioner's books and records to clearly reflect income is indirectly admitted by him in the financial statement he rendered to the collector on December 27, 1946, and is shown by other evidence. Petitioner had a duty to maintain and preserve accounting records sufficient for income tax purposes and in the absence of them, respondent is not required to make an exhaustive audit before adopting another method to compute income. H. A. Hurley, 22 T.C. -, (Sept. 24, 1954). It is necessary, however, that the alternative method *53 adopted by respondent be reasonably accurate, the starting net worth in particular. Except for a reduction of $400 in liabilities, the starting net worth schedule of respondent agrees with the financial statement rendered by petitioner to the collector. The collector was put on notice that the statement was only a preliminary report, since some accounts had not been audited and the audit of others, including receivables and payables, had not been completed. The measures taken by respondent to verify the statement and time devoted to the problem are not shown. It includes an amount for a residence and lot, which, from another financial statement prepared by petitioner, appears to have belonged to petitioner's wife. The testimony discloses considerable reliance on the financial statement submitted by petitioner - more, we think, than was warranted by its preliminary nature. The evidence creates doubt as to whether all of the income disclosed by the net worth statement was income taxable to petitioner. Two deputy collectors, working together, examined the books of petitioner in 1946 to determine his income tax liability for the years 1942 to 1945, inclusive, and as a result prepared *54 returns for those years in the name of petitioner's wife. Upon the presentation of the returns to petitioner for his wife's signature he told the collectors that "You have the income of my wife. Let me see about my income. [It] May be cheaper to file separate returns." They then informed him that they "would have to get the figures all together and work up the figures on his part and see which would be the cheapest and dropped it at that." The returns so prepared were never signed. The sources of the amounts included in the returns as income of the wife is not shown. In the absence of evidence establishing any income-producing activity other than the connection she had with departments of the general store, the inference is that the agents had concluded that she was taxable on the profits of those branches of the business, which are now asserted to be income of petitioner. The wife testified that petitioner owned the entire business but that is refuted by his remark to the agents that the returns they had prepared contained income of his wife. The condition of the record creates indefiniteness on the point and the doubt, under the issue, must be resolved against the respondent. *55 Petitioner possessed the qualifications to keep accounting records sufficiently accurate for income tax purposes, and his failure to do so constituted negligence. Such negligence, however, does not make out a case of fraud. The financial statement rendered by petitioner may not, because of its incompleteness, be regarded as an acknowledgement of income subject to tax. The filing of the statement is opposed to the idea that petitioner did not cooperate with the agents of respondent assigned to compute his tax liability. Neither are we warranted in finding as a fact that petitioner said he would not file income tax returns. The testimony relied upon by respondent was given by deputy collector Cranford. He first testified that petitioner informed him in 1946 that he became angry in a prior year because of a distraint warrant issued against J. F. Pope Company and informed an agent of respondent at that time that he "didn't think he would file any more returns." Later, after his memory was refreshed by testimony allegedly given by him before the Intelligence Unit in May 1949, he testified that petitioner informed him and James T. Still, another deputy collector, prior to December *56 1946, when they started to investigate petitioner's tax liability for the years 1942 to 1945, inclusive, that "He wouldn't file any returns unless he was made to." It does not appear whether Cranford ever signed the transcript of his testimony. Deputy collector Still testified that petitioner did not tell him why he had not filed returns and never remarked in his presence that "he didn't intend to file income tax returns." Another deputy collector, Thomas S. McWhorter, who, with special agent Holloway, investigated the liability of petitioner for income tax in all of the taxable years, testified that at a conference held in July 1948, petitioner informed him that his failure to file returns for the years 1942 to 1945, inclusive, was due to a belief that he had not earned sufficient income to require the filing of returns. Holloway's testimony is to the same general effect. The evidence, considered in its entirety, fails to establish clearly and convincingly, as required under the respondent's burden, that any part of the deficiency each year is due to fraud with intent to evade tax. Accordingly, Decision will be entered that the deficiencies and delinquency penalties are in the *57 amounts set forth herein. Footnotes
1. The amounts reflect adjustments for clerical errors appearing in the notice of deficiency.↩
*. Decrease↩