William S. SPITZ and Barbara A. Spitz, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 91–2066.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1991.

Decided Jan. 27, 1992.

As Amended Jan. 31, 1992.

James W. Gardner, Diana L. Stone, Richard Cates (argued), Lawton & Cates, Madison, Wis., for petitioners-appellants.

Abraham N.M. Shashy, Jr., I.R.S., Gary R. Allen, Charles Bricken, Sara S. Holderness (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for respondent-appellee.

Before POSNER and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

POSNER, Circuit Judge.

■ After two failed efforts to prosecute William and Barbara Spitz for criminal tax evasion, the government assessed civil fraud penalties against them. 26 U.S.C. § 6653(b)(1). They challenged the assessment in the Tax Court, which while throwing out much of the government's case upheld the assessment of fraud penalties totaling $1,843 for 1977 and 1978. The Spitzes appeal. The government concedes that its burden was to prove fraud by clear and convincing evidence. That is the rule of the Tax Court, all right, Rule 142(b) of the Tax Court Rules of Practice and Procedure, and it is a proposition supported by a long line of cases, beginning with *Taplin v. Commissioner*, 41 F.2d 454, 455 (6th Cir. 1930); illustrative recent decisions in this circuit are *Granado v. Commissioner*, 792 F.2d 91, 94 (7th Cir.1986) (per curiam), and *Candela v. United States*, 635 F.2d 1272 (7th Cir.1980). None of these cases, though, does more than borrow uncritically the common law rule. Maybe they are right to do so—and an unbroken practice of sixty years has its claims—but the recent decisions by the Supreme Court holding that securities fraud and bankruptcy fraud need be proved only by a preponderance of the evidence, *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), suggest that the application of the common law rule to tax fraud may be due for reexamination. It is true that those decisions depend, to some extent anyway, on the structure of the particular statutes involved in them, but they could be read broadly to imply that preponderance of the evidence, not clear and convincing evidence, is the federal rule for proof of fraud, save in exceptional cases of which tax fraud might not be one. But the government hasn't argued this. It has conceded the applicability of the common law rule. The concession is fatal. There may have been fraud, but the government failed to prove

it by clear and convincing evidence. The Tax Court's finding of fraud is clear error, and judgment must be entered for the Spitzes.

Mr. Spitz is a certified public accountant and financial consultant, who was (though many years ago) an agent of the Internal Revenue Service—this may explain the pertinacity with which the government has pursued this rather paltry matter. His wife is a schoolteacher. They file a joint federal income tax return, which he fills out. In 1977 he received $10,340 in fees from a tax shelter venturer named Feit. Spitz asked Feit to pay these fees in part by checks made out to Mrs. Spitz, on the ground that she is the saver in the family. Feit did this and she deposited the checks she received in her savings account. When it came time to fill out the couple's income tax return for 1977, Mr. Spitz discovered that he had not received a Form 1099 from Feit, which would have listed the amount Feit had paid him and his wife. Rather than check his bank records, Spitz made (he testified) a wild stab in the dark and wrote $5,022 as his and his wife's income from Feit. The following year, Feit paid $11,200 to the Spitzes, with again the bulk going directly to Mrs. Spitz. This time Feit sent the Spitzes a 1099, but it listed only the $8,000 he had paid to Mrs. Spitz. She mistakenly placed the 1099 in the box that she kept for information relating to the 1979 income tax. So when her husband went to the 1978 box in preparation for filling out the couple's 1978 income tax return he again found no 1099 from Feit and again took a stab in the dark, this time estimating the couple's income from Feit for that year at $5,200. For 1979 Feit filed a proper Form 1099 and Spitz reported the full amount shown on it on the couple's income tax return. But in preparing the couple's 1979 return Spitz also discovered Feit's 1099 for 1978, which had, recall, been erroneously placed in the 1979 box. Rather than file an amended income tax return for 1978 as he should have done, Spitz subtracted the $5,200 that he had paid in 1978 from the $8,000 that the Form 1099 for that year showed that his wife had received, and added the difference to his 1979 income—or rather, slightly more than the difference, because he made an arithmetical error in the government's favor. Finally, the Spitzes' social security numbers shown on the 1099s filed by Feit were erroneous, presumably because Mr. Spitz had supplied Feit with the wrong numbers.

This is an extraordinary series of pratfalls for a certified public accountant and former Internal Revenue Service agent to make. But the issue is not negligence; it is fraud. "Petitioner possessed the qualifications to keep accounting records sufficiently accurate for income tax purposes, and his failure to do so constituted negligence. Such negligence, however, does not make out a case of fraud." *Williams v. Commissioner*, 13 T.C.M. (CCH) 1053, 1056 (1954). See also *Riddle v. Commissioner*, 35 T.C.M. (CCH) 876, 881 (1976).

In finding fraud, the Tax Court rejected, as "strained and self-serving," the explanation that Feit had been instructed to make out checks directly to Mrs. Spitz because she was the better saver in the family. This "unusual designation of the payments to Barbara Spitz," in conjunction with the errors in the social security numbers, persuaded the Tax Court that there had been fraud.

■ We do not understand the Tax Court to have been making a determination of credibility in the usual sense that involves consideration of demeanor and other aspects of a witness's testimony that an appellate court cannot review. In rejecting the bulk of the government's case, the court again and again accepted the Spitzes' testimony, including for example Mrs. Spitz's testimony that she placed the Form 1099 for 1978 in the 1979 tax box by mistake. Rather, the court thought the "better saver" explanation inherently implausible. But in general and in this instance the plausibility of an explanation depends on the plausibility of the alternative explanations. Ronald J. Allen, "The Nature of Juridical Proof," 13 *Cardozo L.Rev.* 373, 409–20 (1991); Allen, "A Reconceptualization of Civil Trials," 66 *B.U.L.Rev.* 401 (1986). However implausible the "better saver" explanation might seem in isolation,

it does not stand alone, but must be compared with the government's alternative explanation, fraud—an explanation itself implausible in the circumstances, as we are about to see—along with the additional and not implausible alternative of sheer carelessness, confusion, and disorganization.

Ordinarily when a taxpayer seeking to evade income tax directs the payment of a part of his income to another person, the other person is a separate taxpayer, usually in a lower bracket—otherwise what's gained? In this case the other person—Mrs. Spitz—was the cofiler of a joint return. The Spitzes were in effect one taxpayer. Income diverted from him to her would show up on the same return with the same effect on liability for income tax, and this regardless of whether she deposited the income in a savings account or any other type of account. Neither in its brief nor at argument did the government propose a theory of how Mr. Spitz might have thought he could evade income tax by directing that a part of his income be paid to his wife. Nor did the Tax Court propose a theory. Nor can we think of one. The Spitzes' explanation, strained and self-serving as it may be, is the most plausible one on the table. There was not clear and convincing evidence against it.

That leaves the erroneous social security numbers. They were on the 1978 and 1979 Form 1099s filed by Feit. (The Tax Court stated erroneously that Feit had filed no form for 1978; it was in 1977 that he filed no form.) Such errors could in principle make it more difficult to match Feit's 1099s to the Spitzes' income tax returns. But Spitz entered the entire amount shown on the 1979 form on the couple's income tax return for that year; there was no attempt to use the error in social security numbers to fool the IRS. As for the erroneous 1978 form, that was the one Mrs. Spitz mistakenly placed in the couple's tax file for 1979—and when he discovered that 1099 while preparing the couple's return for 1979, Mr. Spitz, notwithstanding the error, which might have enabled him to get away without reporting the income, added the difference between the amount on the 1099 and the amount he had paid the previous year to his tax return. Of course he should instead have filed an amended return for 1978, but on the government's theory of fraud he should not have done anything. It is important to note that he added the amount to his 1979 return *before* the Internal Revenue Service began investigating him. Why did he do this, if he had reported erroneous social security numbers in order to prevent the income from Feit from being traced? His action was inconsistent with the government's theory of fraud. A further point is that Mrs. Spitz testified, and so far as we know the Tax Court believed, that the error in the 1978 form wasn't even discovered until the eve of trial. The errors may well have been innocent.

■ Of course, there are inept as well as clever attempts at fraud; and no doubt the former are overrepresented in fraud *cases*, for the cleverest frauds are not detected. The government points out that the record contains other evidence, which we haven't mentioned yet, from which a trier of fact might infer fraud. For example, the Spitzes did not have a large income—it was less than $27,000 in 1977—and it seems improbable that Mr. Spitz would have forgotten how much Feit had paid him and his wife. And why didn't he check with Feit? Was he playing ostrich? That would be evidence of guilty knowledge. *United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir.1991). On the other hand, the Spitzes seem to have been thoroughly disorganized people. And, however all this may be, the Tax Court appears not to have relied on any of the other evidence of fraud, apparently not finding any of it worthy of belief. As we have said, the court appears to have regarded the Spitzes as, on the whole, credible witnesses. If it had found them to be liars, that would have doomed their appeal. It did not. It remarked only two pieces of evidence as bearing on fraud: the erroneous social security numbers, and the direct payments to Mrs. Spitz. Given the circumstances—Mr. Spitz's having reported *all* the income reported on the 1099s that contained erroneous social security numbers, and the fact

that he and his wife filed joint returns, so that any income received by her was added to his—the evidence of fraud on which the Tax Court relied must be adjudged weak and equivocal rather than clear and convincing.

REVERSED.