883 A.2d 986

**James Bradley LAROCCA**

v.

**STATE of Maryland.**

**No. 2628, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 29, 2005.

Michael R. Braudes (Nancy S. Forster, Public Defender, on the brief), Baltimore, for appellant.

Devy Patterson Russell (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Panel: MURPHY, C.J., DAVIS, SALMON, JAMES R. EYLER, KENNEY, DEBORAH S. EYLER, ADKINS, KRAUSER, BARBERA, SHARER, MEREDITH and WOODWARD, JJ.

DEBORAH S. EYLER, Judge.

In a court trial in the Circuit Court for Washington County, James Bradley Larocca, the appellant, was convicted of possession with intent to distribute marijuana and possession of marijuana. The court merged the simple possession conviction and sentenced the appellant to five years' imprisonment, with all but two years suspended in favor of three years' probation.[1] The appellant presents three questions for review:

---

1. The sentence was to run concurrent with a federal sentence the appellant was serving.

I.   Was the evidence legally sufficient to support his conviction?

II.  Did the trial court err in considering a witness's extrajudicial statement as substantive evidence?

III. Did the trial court err in denying the appellant's motion to suppress evidence?

This case originally was placed on the Court's non-argument docket. Because this type of sufficiency of the evidence issue is likely to recur in other cases, this Court set the case in for an *en banc* hearing, and permitted the parties to file supplemental briefs.

For the following reasons, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

On January 16, 2003, the appellant and his friend, David Hinkle, were arrested and charged with possession of marijuana with intent to distribute and simple possession. Hinkle pleaded guilty to the lesser offense, and the State *nol prossed* the greater offense.

At the appellant's trial, the State called as witnesses Sergeant Johnny Lee Murray, Officer John Lehman, and Officer Todd Webster, of the Hagerstown Police Department; Hinkle; and Jeremy Miner, another friend of the appellant. The appellant did not call any witnesses. He did, however, introduce into evidence an affidavit signed by Hinkle. The evidence viewed in the light most favorable to the verdict was as follows.

On the night in question, the appellant, Hinkle, and Miner were in Hagerstown, "just riding through town" in a Honda Civic registered to Hinkle's mother. Hinkle was driving. The appellant was the front seat passenger. Miner was sitting in the back seat. It had been snowing on and off throughout the day.[2]

---

2.  Earlier in the evening, a fourth occupant had been seated in the back passenger seat, with Miner. He got out of the car before the events central to this case took place.

At the appellant's request, Hinkle drove to the 600 block of N. Mulberry Street. Hinkle double parked in front of a house there. It so happened that Sergeant Murray and Officer Webster, dressed in plainclothes, were at that location, conducting an undercover "trash pull." The officers were assigned to a special unit that was targeting street level drug dealers. No one else was in the area.

According to those portions of the testimony of Hinkle and Miner most favorable to the State, as the trio was driving to N. Mulberry Street, Miner produced a marijuana blunt, lit it, smoked it, and passed it to Hinkle. This communal partaking in marijuana took place in the appellant's presence, in the passenger compartment of the Honda. It continued while the appellant got out of the car and went into the house where the Honda was double parked.

Sergeant Murray, standing nearby, watched as the appellant entered the house on N. Mulberry Street and then a short time later exited and returned to the Honda. Sergeant Murray did not see the appellant carrying or holding anything. However, when the appellant opened the car door to get back inside, Sergeant Murray smelled burning marijuana in the vicinity of the Honda. He could not see inside the Honda because its windows were tinted and the rear window was covered with snow. Sergeant Murray noticed that the Honda's rear license plate was completely covered with snow.

Sergeant Murray told Officer Webster about what he had seen and smelled. The officers put in a request for a uniformed colleague, Officer Lehman, to follow the Honda in a marked cruiser, which he did. The undercover officers followed behind Officer Lehman in their unmarked car.

The marijuana smoking inside the Honda continued after the three men departed from N. Mulberry Street. While the Honda was waiting at a red light, Hinkle noticed police car lights coming up behind him, "from back ... back about a mile or so." Hinkle testified, "And as soon as I seen him, I was trying to get through the intersection. I didn't know if

the police officer was coming to pull me over or trying to . . . on a call that he had to get to."

Officer Lehman made the traffic stop and approached the driver's side of the car. Sergeant Murray and Officer Webster approached the opposite side of the vehicle and asked the passengers to roll down their windows. When the windows were rolled down, Sergeant Murray and Officer Webster both smelled the odor of burnt marijuana coming from inside the car. According to Officer Webster, it took about three to five minutes to make the traffic stop.

Officer Lehman obtained Hinkle's driver's license and the registration for the Honda. Because of the smell of marijuana, the investigation immediately focused on drugs inside the vehicle or on the occupants' persons. Hinkle was brought to the rear of the Honda and asked by Sergeant Murray if there were any drugs on his person or in the vehicle. He answered in the negative and consented to a search of his person. That search revealed rolling papers and currency.

Sergeant Murray next ordered Miner to exit the vehicle. He did as ordered and also consented to a search. The search of Miner uncovered a small baggie of marijuana. Miner was immediately placed under arrest for possession of marijuana.

The appellant also was asked to exit the Honda. He complied. Officer Webster inquired whether he had anything illegal in his possession. The appellant responded in the negative. He then consented to a search of his person. No drugs or paraphernalia were recovered in that search.

Officer Webster proceeded to search the Honda. Underneath the front passenger seat he recovered a white plastic bag that contained five individually wrapped baggies of marijuana. In Officer Webster's words, the white bag was located, "[j]ust under the rim of the seat. If [the appellant is] sitting in the seat, if you just reach your hand under, I guess right where normally the adjustments are, it's right under there in the front portion of the seat." In other words, the white plastic bag was found directly under the appellant's seat, on the floor of the car near the edge of the seat, in the area

immediately behind and next to where the appellant's legs had been when he was seated. The white plastic bag was opaque, and therefore had to be opened to see what was inside.

None of the occupants of the vehicle claimed ownership of the white bag of marijuana at the time of the stop. As noted above, the appellant and Hinkle were arrested and charged with possession of marijuana with intent to distribute and simple possession.[3] Miner was arrested and charged with simple possession of the marijuana found on his person.

At the police station, Officer Webster interviewed Miner and Hinkle. Miner told the officer he did not know how the white bag of marijuana got under the front passenger seat of the car. Hinkle told Officer Webster that the white bag of marijuana was not in the car until the appellant and Miner got in the car. Also, Hinkle told Officer Webster, "Brad [the appellant] has told me he sells dope." Hinkle gave this information in written statement form, but refused to sign it. Hinkle's statement was admitted at trial for impeachment purposes only.

Before trial, Hinkle gave the appellant's counsel an affidavit in which he attested that the appellant was not aware of the white bag of marijuana underneath the seat prior to its seizure by the police; that the marijuana was in the car before the appellant entered it; and that he never told the appellant that the marijuana was there. He also attested that, sometime after their arrests, he wrote a note to the appellant's defense counsel (attached to the affidavit), admitting that the marijuana was his.

Also as noted above, before trial, Hinkle pleaded guilty to the lesser charge of simple possession of the marijuana in the

---

3. Subsequent laboratory analysis showed that the marijuana in the white plastic bag, together with its packaging, weighed about five ounces (138.26 grams). Officer Webster opined that the street value of the marijuana was between $500 and $600 and that the amount of marijuana recovered and its packaging indicated that it was for sale and not personal use.

white bag and the State *nol prossed* the possession with intent to distribute charge against him.

Miner's trial testimony was consistent with what he told Officer Webster on the night of the arrest. Miner said he did not know the white bag of marijuana was in the car, did not put it there, and did not see anyone else put it there. He first learned of its presence when the police removed it from the car.

Hinkle testified at trial that the white bag of marijuana belonged to him and its presence in the car was unknown to the appellant. He said that the day before the stop, someone named Robert, whose last name Hinkle did not know, gave him the bag of marijuana (worth about $500) for free. He put the bag under the front passenger seat of the Honda to take to his house, for personal use (although it was packaged for sale), but forgot about it. The next night, when the traffic stop occurred, he did not tell the police about the bag under the seat because he was scared (not because he had forgotten about it, however).

Many times in his testimony, Hinkle claimed not to remember what had happened on the night of the traffic stop, because of "short term memory loss" due to drug use. Yet, he claimed to remember clearly that the appellant did not know of the presence of the bag of marijuana in the car. Hinkle's trial testimony was inconsistent with what he told Officer Webster on the night of the stop. At trial, he claimed that he had put the marijuana in the car the night before and only he knew of its presence; in the interview, he said no such thing and instead suggested that the drugs had come into the car with Miner and the appellant.

After holding the case *sub curia*, the trial court reconvened and made his ruling from the bench. He recited the names of the various witnesses who testified, then said:

> The physical evidence consisted of five one ounce baggies of marijuana found under the front passenger seat where the defendant was located, the lab report, and the statements of Hinkle and Miner.

The Court has previously ruled that the stop was legal, search consensual which resulted in the seizure of the five baggies, as I indicated, located right under the front seat where the defendant was located.

The evidence would indicate by, again by the totality of the circumstances and proximity of the drugs to the defendant, constructive possession and control. But does it constitute guilty beyond a reasonable doubt? Without rehashing the whole testimony, the key witness in this case, I think the lynchpin, among other things, was Hinkle. His statements to Officer Webster were contrary to the statements that he made subsequently to that time, which he submitted by note and affidavit through counsel for the defendant, whereby he indicated the drugs were all his, the defendant didn't even know anything about them. And basically he never told the police at the time he was interrogated they were his. He testified at trial he put it under the front seat, not the driver's seat, but he had forgotten about it. It was his, for his own personal use, even th[ ]ough they were packaged in one ounce baggies, which I guess could be argued could be for personal use and/or distribution. After the arrest he writes this note and affidavit, which is inconsistent with what he told the police officer. Hinkle's testimony was that the reason he didn't ... the reason his statement was different at the time he was interrogated by Officer Webster is that he was scared.

The Court finds that Hinkle's testimony is totally noncredible. His story is too pat. He is obviously torn between loyalty to this defendant and his own self-preservation when he appeared in court in May of this year concerning his own criminal charges. And I find his statements to the police to be the real truth. On the evening in question, [January] 16, 2003, it was a Thursday evening, Friday morning. It was terrible weather. There was no explanation as to why these people were out and they were riding around hot spots. There was the smell of marijuana. The marijuana was in easy reach of the defendant, easier reach than Hinkle, but it was in Hinkle's automobile and would

indicate joint constructive possession. This taken with Hinkle's incredible testimony, there is evidence to convict the defendant as to both charges beyond a reasonable doubt.

## DISCUSSION

## I.

### *Sufficiency of the Evidence*

██ The appellant contends the evidence was legally insufficient to support his conviction of possession of marijuana with intent to distribute. His complaint focuses on the possession element of the crime. He argues that there was not a "scintilla of evidence that he was even aware of the existence of the [marijuana], and the driver/owner of the car freely admitted that in fact he was the owner of the drugs." He maintains that the evidence at most showed "proximity [on his part] to concealed drugs," which standing alone cannot support a finding of knowledge of the presence and the nature of the contraband. He emphasizes that the marijuana was in an opaque bag that he could not see from his vantage point as a front seat passenger, because it was tucked under his seat. He also stresses that there was no evidence that he had a possessory interest or right in the Honda.

The State responds that the evidence was sufficient to support a reasonable finding, beyond a reasonable doubt, that the appellant had knowledge of the bag of marijuana in the car and was in constructive possession of it.

██ "The standard for appellate review of evidentiary sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Smith,* 374 Md. 527, 533, 823 A.2d 664 (2003) (citations omitted). "Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder." *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323 (1998). In addition, we give " 'due regard to the [fact finder's] finding of facts, its resolution of conflicting

evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.'" *Moye v. State*, 369 Md. 2, 12, 796 A.2d 821 (2002) (quoting *McDonald v. State*, 347 Md. 452, 474, 701 A.2d 675 (1997) (quoting *State v. Albrecht*, 336 Md. 475, 478, 649 A.2d 336 (1994))).

"Although a conviction may rest on circumstantial evidence alone, a conviction may not be sustained on proof amounting only to strong suspicion or mere probability." *White v. State*, 363 Md. 150, 162–63, 767 A.2d 855 (2001) (citation omitted). " 'Circumstantial evidence which merely arouses suspicion or leaves room for conjecture is obviously insufficient. It must do more than raise the possibility or even the probability of guilt. [I]t must . . . afford the basis for an inference of guilt beyond a reasonable doubt.'" *Taylor v. State*, 346 Md. 452, 458, 697 A.2d 462 (1997) (quoting 1 Underhill, Criminal Evidence § 17, at 29 (6th ed. 1973)).

Section 5–602 of the Criminal Law Article of the Maryland Code (2002) ("CL"), prohibits the possession with intent to distribute a controlled dangerous substance, which under CL section 5–402(d), includes marijuana. (Simple possession is prohibited under CL section 5–601.)

CL section 5–101(u) defines "possess" to mean "to exercise actual or constructive dominion or control over a thing by one or more persons." To support a conviction for a possessory offense, the " 'evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited drug in the sense contemplated by the statute, *i.e.*, that [the accused] exercised some restraining or directing influence over it.'" *State v. Leach*, 296 Md. 591, 596, 463 A.2d 872 (1983) (quoting *Garrison v. State*, 272 Md. 123, 142, 321 A.2d 767 (1974)). "The accused, in order to be found guilty, must know of both the presence and the general character and illicit nature of the substance. Of course, such knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988).

■   The following factors are relevant to determining the issue of possession:

> 1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Folk v. State*, 11 Md.App. 508, 518, 275 A.2d 184 (1971); *see also Hall v. State*, 119 Md.App. 377, 394, 705 A.2d 50 (1998).

In advancing his arguments, the appellant places primary reliance on four cases: *White v. State*, 363 Md. 150, 767 A.2d 855 (2001); *Taylor v. State*, 346 Md. 452, 697 A.2d 462 (1997); *State v. Leach*, 296 Md. 591, 463 A.2d 872 (1983); and *Garrison v. State*, 272 Md. 123, 321 A.2d 767 (1974). In each case, the Court of Appeals held the evidence at trial insufficient to support the defendant's drug possession conviction. We also shall discuss *Moye v. State*, *supra*, another case in which the Court struck down a drug possession conviction on sufficiency grounds.

In *Garrison,* the police executed a search warrant for the house where the defendant lived with her husband. When they entered the house through the rear bedroom, they saw the husband in the adjacent bathroom, attempting to flush more than one hundred bags of heroin down the toilet. In the front bedroom, which had no access to the bathroom, and from which one could not see the bathroom, the police found the defendant in bed. There was no contraband in the front bedroom.

In holding the evidence insufficient to sustain the defendant's conviction for possession of heroin with intent to distribute, the Court noted: "The seized heroin was not in the plain view of [the defendant], nor was there a juxtaposition between her (in the front bedroom) and the contraband being jettisoned by her husband in the bathroom." *Garrison,* supra,

272 Md. at 131, 321 A.2d 767 (citations omitted). In addition, the Court stressed that there was no evidence that the defendant was engaged in selling narcotics or that she was using heroin (it noted that she did not have fresh needle marks on her arms); she made no inculpatory statement; and, although money was found in the front bedroom, it was not connected to the contraband.

In *Leach*, the defendant was convicted of possession of phencyclidine (PCP). While executing a search warrant, the police found five individually wrapped packets of PCP in a closed container in the bedroom of the defendant's brother's apartment. They also found "three smoking pipes, and a green leather case holding drug cutting tools." *Leach, supra,* 296 Md. at 594, 463 A.2d 872. The defendant had ready access to his brother's apartment and gave the apartment as his address when he was booked by the police. The Department of Motor Vehicle records listed the apartment as the defendant's address.

The apartment had only one bed, however, and the defendant was not in the apartment when the police executed the search warrant. The Court of Appeals held that the fact that the defendant's brother was the occupant of the apartment "precludes inferring that [the defendant] had joint dominion and control with [his brother] over the entire apartment and over everything contained anywhere in it." *Id.* at 596, 463 A.2d 872. Thus, from the fact that the defendant had access to his brother's apartment, one could not rationally infer that he knew that there were illegal drugs inside a closed container in his brother's bedroom.

*White* is another case that involved illegal drugs in a closed container, outside of the defendant's view, in a place the defendant did not have a possessory interest in or right to; but the space was a car. The defendant was the front seat passenger in a car that was stopped for traveling too closely. When a consent search of the driver revealed marijuana on his person, officers searched the trunk of the car. There they found a sealed box of pots and pans that also contained 194

grams of cocaine. The Court of Appeals found the evidence insufficient to show that the defendant knew of the presence of the cocaine in the trunk and therefore to prove that he was in possession of the cocaine.

The appellant relies heavily upon *Taylor v. State, supra.* In that case, the defendant had rented a hotel room in Ocean City with four friends. When a police officer entered the room, the defendant was found lying on the floor, with his head turned away from the door, either asleep or feigning sleep. There were clouds of smoke in the room that smelled like marijuana. An officer questioned one of the other occupants of the room, Chris Myers, who retrieved a baggie of marijuana from a carrying bag and told the officer it was his. When the officer began searching the room, Myers produced a second baggie of marijuana, from another carrying bag. A subsequent search of the room by the police revealed more marijuana in a "multi-colored bag." *Taylor, supra,* 346 Md. at 455, 697 A.2d 462. Ultimately, the defendant was convicted of possession of the marijuana found in the bags.

The Court of Appeals reversed the conviction, holding that a rational inference could not be drawn that the defendant had

exercised a restraining or directing influence over marijuana that was concealed in personal carrying bags of another occupant of the room. Because [the defendant] was in joint rather than exclusive possession of the hotel room, his mere proximity to the contraband found concealed in a travel bag and his presence in a room containing marijuana smoke were insufficient to convict him.

*Id.* at 463, 697 A.2d 462.

The case at bar is distinguishable from all four of these insufficiency of evidence cases. In *Garrison,* the contraband was located in a room in the house that could not be seen from the defendant's location in another room, and was not near her, and there were no facts from which to infer knowledge by her of the presence of drugs in the house. In *Leach* and *White,* the contraband was in a closed container that was not near the defendant and not in a vehicle or residence over

which the defendant had any right or interest: in *Leach,* the defendant was not even in the apartment when the container of drugs was found; in *White,* the container was in the trunk of the car, not visible to the defendant and not in an area close to him or under his control.

Here, unlike in those cases, the white bag was not concealed or hidden, or in another room of a house. It was located immediately underneath the appellant's seat in a small car, in arm's reach, where it was readily accessible to him but not to the other occupants of the vehicle.

In *Taylor,* the contraband was in carrying bags that were personal to someone *other than the defendant.* The lynchpin of the Court's holding there was that it is not permissible to infer that someone merely occupying a room in which there are carrying bags belonging to another person knows the contents of those personal carrying bags.

In this case, by contrast, the white bag was not personal to someone other than the appellant, to a particular occupant of the car, or to anyone. The kind of evidence that in *Taylor* negated any reasonable inference of knowledge and possession is not present here. The white bag was an ordinary plastic bag. *See Ford v. State,* 37 Md.App. 373, 381, 377 A.2d 577 (1977) (holding that evidence was sufficient to sustain conviction of front seat passenger of possession with intent to distribute marijuana in paper bag in foot well of Volkswagen, on passenger's side near gearshift, in presence of marijuana smoke). Officer Webster testified that plastic bags of that very sort commonly are used by drug sellers to carry individually wrapped baggies of drugs.

This case also is distinguishable from *Moye,* the most recent one in which the Court of Appeals has held the evidence at trial legally insufficient to support a drug possession conviction. There, the police went to a house in response to a report that someone there had been attacked with a knife. When they arrived, several people were in the house: a couple who leased the house; a man who rented the basement apartment from the couple; and the defendant. The couple and the

renter exited the house soon after the police arrived. The police saw the defendant moving about the first floor of the house. He did not respond to requests that he exit. The police then saw the defendant looking out a basement window. Several minutes later, the defendant exited the house from a door leading out of the rented basement area. The police arrested the defendant and then entered the basement. There they found three open or partially open drawers containing several small bags of marijuana, a small digital scale with a white substance on it, and a dinner plate upon which there was a razor blade and white residue. The defendant was charged with drug possession crimes, and was convicted.

In holding the evidence insufficient to support the convictions, the Court emphasized that there were no facts showing his position in the basement relative to the drugs, or that they were visible to him, and thus that he had any proximity to them from which knowledge could be inferred. The Court also pointed out that there was no evidence that the defendant had a possessory right or interest in the house, or the basement part of it.

The *Moye* Court focused its sufficiency analysis on whether the contraband was in the defendant's plain view or line of sight as he was walking through the basement. It did so after determining that there was no other fact that could support an inference that the defendant knew of the presence of the contraband in an area of a house he merely was passing through, briefly, to exit. *Moye*, like the other four cases we have discussed, was a mere proximity situation; the defendant simply was seen in an area near the contraband. There were no facts that would permit an inference that he knew of the contraband's presence, however.

In the case at bar, unlike in *Moye* (and the other cases we have discussed), the facts did not merely show proximity. The location and nature of the white bag of marijuana, the appellant's position in the car, the mutual use of marijuana and the marijuana-focused purpose of the trip on the night in question

permitted an inference that the appellant knew of the marijuana's presence in the car.

During the ride and when the stop was made, the appellant was sitting in the front passenger seat. The bag was found under the front of that seat, which means, before he got out of the car at the officers' direction, it was between and behind his legs, in a place under his immediate and primary control, by reach—just as the seat adjusting mechanism was under his control. The bag was readily accessible and movable by the appellant, but not by either of the other occupants of the car. To be sure, the white bag was not in the appellant's plain view or direct line of sight when he was ordered out of the passenger seat of the Honda. Proof that contraband is in a person's plain view or line of sight can be sufficient to show the person had knowledge of its presence; it is not necessary to prove knowledge, however.

As Judge Moylan explained in *Folk, supra,* one of the common threads running through cases holding evidence sufficient to prove joint constructive possession, beyond a reasonable doubt, is "the fact that the contraband was within the view *or otherwise within the knowledge of the defendant.*" 11 Md.App. at 518, 275 A.2d 184 (emphasis supplied). By contrast, one of the factors running through cases holding evidence of joint constructive possession insufficient to convict is "the fact that the contraband was secreted away in a hidden place not shown to be within [the defendant's] *gaze or knowledge or in any way under his control.*" *Id.* at 514, 275 A.2d 184 (emphasis supplied).

This second *Folk* factor (the first being proximity) "concerns the [defendant's] knowledge, through one sense or another, of the presence of the contraband." *Herbert v. State,* 136 Md.App. 458, 466, 766 A.2d 190 (2001). Seeing something is one way of knowing of its presence. *See e.g. Johnson v. State,* 142 Md.App. 172, 199, 788 A.2d 678 (2002) (holding that it was "inconceivable" that the defendant, a passenger in a vehicle, did not know of the presence of contraband on the gearshift, in his plain view and arm's reach). Line of sight or

plain view evidence is not essential to show knowledge of the presence of contraband, however. When an object is out of sight, it is not necessarily "out of mind." *Compare Colin v. State,* 101 Md.App. 395, 407, 646 A.2d 1095 (1994) (holding that circumstantial evidence that the defendant was a passenger in a vehicle in which contraband was hidden in the compartment in a door, reacted nervously when the vehicle was stopped, and gave the officers a false name "add[ed] up to a revealing picture" that "could reasonably be interpreted as showing that he had something to hide and knew where it was to be found").

Also of critical importance here, the evidence permitted an inference that the appellant was engaged in the mutual use and enjoyment of marijuana (the fourth *Folk* factor) and that the three occupants of the car were engaged in a marijuana-focused common enterprise. There was direct evidence that marijuana was being smoked in a communal fashion in the passenger compartment of the small vehicle, with the windows rolled up.

As Judge Moylan observed in *Folk,* it is common knowledge that people use marijuana by sharing a single cigarette and inhaling the smoke from the cigarette and the ambient smoke. 11 Md.App. at 519, 275 A.2d 184. A fact-finder reasonably could credit that part of the evidence showing that the marijuana blunt was being smoked and shared inside the Honda, discredit the testimony that the appellant merely watched as that happened, and conclude that the appellant was sharing in the marijuana blunt as well.[4] Even if the blunt were not passed to the appellant, however, the evidence showed that he was participating in its use by sitting in the closed, small space and breathing marijuana smoke. Certainly, he knew by his

---

4. The dissent suggests that such an inference merely would be a conclusion from disbelief of Miner's and Hinkle's testimony (that the appellant *did not* smoke the blunt) that the opposite happened (that the appellant *did* smoke the blunt). That is incorrect. Evidence that the three men were traveling together in a small car with a lit marijuana blunt being passed around in a communal fashion itself could support a reasonable inference that all three men were smoking the blunt.

senses of sight and smell that marijuana was in the car and was being used.

The holding in *Taylor* does not preclude an inference of mutual use and enjoyment in this case. In *Taylor*, the Court of Appeals concluded that one could not reasonably infer, from evidence of the presence of lingering marijuana smoke in the air of a motel room and evidence that some friends of the five occupants of the room had recently smoked marijuana in it, that one of the occupants of the room had used marijuana himself. In this case, the evidence showed that the appellant was inside the passenger compartment of a small car, in which a marijuana blunt was lit, smoked, and shared, from the back seat to front, before his eyes. The drug use was present tense, communal, and open. The facts make reasonable an inference of mutual use and enjoyment of the contraband, whereas in *Taylor* the facts did not. In the cases primarily relied upon by the appellant and in *Moye*, there was no evidence that any defendant was in a group situation in which contraband was being used, and indeed no evidence of drug use at all.[5]

In *Maryland v. Pringle*, 540 U.S. 366, 374, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), the Supreme Court held that police officers had probable cause to believe that a front seat passenger in a car had committed the crime of possession of cocaine, either solely or jointly with the other occupants of the car. The evidence showed there were three men in a small car; it was 3:16 a.m.; there was $763 in cash in the glove compartment, in front of the defendant but not in his view; there were five baggies of cocaine behind the armrest of the back seat,

---

5. The federal drug possession cases cited by the dissent also are distinguishable on this ground. *United States v. Stanley*, 24 F.3d 1314, 1317–21 (11th Cir.1994) (illegal drugs were hidden under dashboard of car occupied by defendant front seat passenger; no evidence of mutual use or enjoyment of contraband; there was evidence of a drug sale, but not that the defendant heard or participated in it, or knew it was happening); *United States v. Ferg*, 504 F.2d 914, 916 (5th Cir.1974) (marijuana was hidden behind back seat of car; defendant was front seat passenger; no evidence of mutual use or enjoyment of contraband by occupants of car).

but accessible to all the occupants; and the men failed to offer any information about the ownership of the cocaine or the money.

The *Pringle* Court observed that automobile passengers "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Id.* at 373, 124 S.Ct. 795 (citing *Wyoming v. Houghton,* 526 U.S. 295, 304–05, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)). The Court explained that it was "entirely reasonable" for the arresting police officers in *Pringle* to believe that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine found behind the armrest. *Id.* at 372, 124 S.Ct. 795.

In *State v. Suddith,* 379 Md. 425, 842 A.2d 716 (2004), the Court of Appeals held that the observation in *Pringle,* that car occupants are likely to be involved in a common enterprise, is relevant to a sufficiency of the evidence assessment. *Id.* at 493, 842 A.2d 716. Although the *Pringle* case addresses probable cause, it nevertheless establishes generally the reasonableness, and hence permissibility, of an inference that people who know each other and are traveling in a car in circumstances indicating drug using or selling activity are operating together, and thus are sharing knowledge of the essentials of their operation.

Here, the circumstances permitted an inference that the three occupants in the Honda were engaged in a marijuana-focused common enterprise. They knew each other; were together in a small car; the driver was making a stop for one of the passengers (the appellant), in a neighborhood where illegal drugs were a serious enough problem to have undercover officers assigned to a trash pulling detail; there was communal marijuana smoking inside the car; the driver had rolling papers; and the back seat passenger had marijuana on his person.

The testimony of Hinkle and Officer Webster showed that there was a period of several minutes when Hinkle was driving the Honda, marijuana was being smoked in it, and he

became aware that the car was being followed by a police cruiser. A reasonable fact-finder could infer from this evidence that Hinkle told the other occupants of the car, with whom he was engaged in the marijuana-focused common enterprise, that the police were coming up behind them, and that there was a window of opportunity for the three to hide whatever marijuana was in the car. Again, the group was in a small car with marijuana being passed around and smoked. It would have been obvious to each of them that, if they were stopped by the police, the odor of marijuana would alert any officer making the stop that there was marijuana in the car.

It was in that context, under those circumstances, that the bag of marijuana was found within the appellant's easy reach, directly under his seat, behind and between his legs, in the very location it would occupy if he wanted to quickly discard it. To the extent the white bag could be described as being hidden, then, its location tended to show that the person who hid it was the person who was sitting in the front passenger seat, who simply could reach to place it where it was found, and not one of the other two occupants of the car, who could not do so.

These facts, pertaining to immediate and primary proximity, knowledge based on location and accessibility, the absence of a personal link between the contraband and a particular person, mutual use and enjoyment of contraband, and common enterprise, viewed in combination, permitted a reasonable inference that the appellant knew of the presence of the bag of marijuana, and its illicit character, and exercised dominion and control over it. Thus, a reasonable fact-finder could infer, from the circumstantial evidence presented here, that the appellant was in possession of the white bag of marijuana. The amount of marijuana in the bag and the way it was packaged further permitted an inference of intent to distribute.[6]

---

6. In oral argument before this Court, the appellant's counsel cited *Myers v. Commonwealth*, 43 Va.App. 113, 596 S.E.2d 536 (2004), to support his argument that the evidence in the case at bar is insufficient to support his conviction. In *Myers*, the defendant, a paraplegic, was

Above and beyond that, the fact-finder had the utterly implausible trial testimony of Hinkle, offered to show that only he, and not the appellant, knew the marijuana was in the car. This testimony was significant for two reasons.

First, the testimony contradicted what Hinkle had told Officer Webster at the time of the arrest, before he was insulated from prosecution on a serious distribution charge. It thereby exposed Hinkle as an opportunistic liar. As the driver of the car, Hinkle was presumed to know its contents, *see Smith, supra,* 374 Md. at 559, 823 A.2d 664; indeed, he conceded knowledge. The central question in the case was whether *Hinkle alone* knew of the presence of the marijuana in the car or whether *Hinkle and the appellant* together knew of its presence. In deciding that issue, the trier of fact was entitled to weigh into the mix the credibility-based fact that

the front seat passenger in a pickup truck that was stopped (after a high speed chase) for running a stop sign. In a search of the pickup truck the next day, the police found "a lot of garbage on the floor board" and "blankets, a jacket, just some junk laying in the [passenger side] front floor board of the truck." *Id.* at 117, 596 S.E.2d 536. They also found a .32 revolver wrapped in a blanket on the front floorboard. The gun was not registered to the driver or the defendant. The defendant was convicted of being a felon in possession of the revolver. The appellate court reversed, holding that the evidence did not show anything more than mere proximity of the defendant to the firearm. It emphasized that the gun was hidden in the blanket, which was found in an "upheaval of junk" on the floorboard; that there were no furtive movements by the defendant; and that there was nothing else to show that the defendant exercised dominion or control over the revolver. *Id.* at 122–23, 596 S.E.2d 536

The *Myers* case is distinguishable from the case at bar. In *Myers,* there was no evidence that the vehicle occupants were engaged in a common enterprise involving guns; and the revolver's condition of being wrapped in a blanket amidst blankets, clothes, junk, and trash in the car did not give rise to a reasonable inference that it had been quickly discarded by the person who was nearest to it and had the greatest access to it. It also was not clear that the defendant, given his physical condition, had access to it at all. His physical condition militated against any reasonable finding that he could have quickly disposed of the revolver by wrapping it in a blanket. (A second gun was found approximately 60 feet from where the pickup truck had come to a rest; the defendant had argued that he did not have the physical capacity to throw that gun from inside the truck to where it landed.)

Hinkle was lying about what was known and was doing so to try to help the appellant. Hinkle's willingness to lie on the witness stand out of loyalty to the appellant made it all the more probable that the two were involved in a common enterprise in which they shared knowledge and gave protection.

Second, the trial court found that Hinkle's testimony offered a completely unbelievable scenario for how the marijuana came to be under the appellant's seat on the night in question. That finding lent strength, by comparison, to the inferences underpinning the State's case.

> "[T]he plausibility of an explanation depends on the plausibility of alternative explanations." *Spitz v. Commissioner*, 954 F.2d 1382, 1384 (7th Cir.1992). And so, "realistically, a jury called upon to decide guilt must compare the prosecution's version of the incident giving rise to the case with the defense version." *Sandoval v. Acevedo*, 996 F.2d 145, 150 (7th Cir.1993) (other citations omitted). Confidence in a proposition, such as [a defendant's] guilt, is created by excluding alternatives and undermined by presenting plausible alternatives.

*United States v. Beard*, 354 F.3d 691, 692–93 (7th Cir.2004) (Posner, J.).

In this case, the remarks of the judge, sitting as the trier of fact, disclose that he used Hinkle's story, and its sheer implausibility, to evaluate the plausibility, and hence the strength, of the inferences that in combination formed the evidence against the appellant. The evidence that Hinkle was giving a false story that was inherently inconsistent, made no sense, and contradicted what he told the police on the night in question, made stronger the inferences that could be drawn from the State's evidence. *See Smith, supra*, 374 Md. at 550, 823 A.2d 664 (observing that presence of others in car can affect strength of inference that a defendant had knowledge of presence of handgun in a car, but does not make the inference unreasonable to begin with).

For this trier of fact, whose thought process we happen to have before us, Hinkle's false testimony was the proverbial icing on the cake, not because the fact-finder was using it as positive proof of the opposite of what Hinkle had testified to, but because it gave additional meaning to the evidence already introduced. The judge's comments, read *en toto*, show as much.

To be sure, "[o]rdinarily disbelieving evidence is not the same thing as finding evidence to the contrary." *Hayette v. State*, 199 Md. 140, 145, 85 A.2d 790 (1952); *see also Attorney Grievance Comm'n v. Clements*, 319 Md. 289, 298, 572 A.2d 174 (1990) ("A refusal to believe evidence of a respondent, however, does not, of itself, supply affirmative evidence of the dishonesty, fraud, deceit or misrepresentation charged. The issue is whether Bar Counsel presented sufficient evidence of the charge to meet the clear and convincing standard of proof.").

The trial judge in this case did not find that the appellant knew of the presence of the white bag of marijuana underneath the front passenger's seat based only on his disbelief of Hinkle's testimony to the contrary, however. The evidence in the record supported the finding, and Hinkle's preposterous testimony lent strength to that evidence. In addition, disbelief of Hinkle, who, until he entered into a plea bargain with the State, faced the same criminal penalties with respect to the same bag of marijuana as did the appellant, and at the time of trial, stood convicted of possession of the same bag of marijuana, is hardly the same as disbelief of a neutral nonparty witness, whose testimony, when disbelieved, is merely erased from the fact-finder's mind. Hinkle was involved in the criminal activity that was happening in the Honda that night. His implausible explanation for how the white bag of marijuana came to be under the appellant's seat and his willingness to lie for the appellant properly informed the trial judge's decision about whether he was persuaded by the State's evidence, beyond a reasonable doubt.

For all of these reasons, we conclude that the evidence adduced at trial was sufficient to support a rational finding, beyond a reasonable doubt, that on the night in question the appellant was in possession of marijuana with the intent to distribute it.

## II.

### *Substantive Use of Impeachment Evidence*

The appellant argues that, even though Hinkle's statement was admitted into evidence solely for impeachment purposes, and was not admissible substantively, the trial judge improperly used it as substantive evidence. In particular, he points to the judge's remark, made in the middle of his ruling, "And I find [Hinkle's] statements to the police [on the night of the arrest] to be the real truth."

In our analysis of the sufficiency of the evidence issue, we have explained that, as we interpret the trial judge's ruling, reading it fully with the remark quoted above taken in context, he was using Hinkle's statement to assess the veracity of Hinkle's trial testimony, not as substantive evidence. The trial judge is presumed to know and apply the law, *see State v. Chaney,* 375 Md. 168, 181, 825 A.2d 452 (2003), and demonstrated his knowledge of the law to begin with by ruling that Hinkle's statement did not qualify as substantive evidence under Rule 8–502.1(a). When, immediately after the court's ruling, defense counsel complained that the court had used Hinkle's statement substantively, the judge responded, "Well I understand that, I mean it's just part of the evidence. I mean but I just find that he [meaning Hinkle] ... *I have a credibility problem.*" (Emphasis supplied.) This comment, together with the manner in which the trial judge used the evidence, as we see it, shows that the evidence was not used substantively.

A cautionary word is noteworthy. In bench and jury trials alike, evidence often is admitted for a limited purpose because it is inadmissible for another purpose (and often one that the introducing party would prefer it be admitted for). The safeguard against juries using such evidence for its impermis-

sible purpose is a limiting instruction. Obviously, in a bench trial, the judge making the ruling and the trier of fact are one. It is important that the trial judge act vigilantly to adhere to his limited admissibility ruling, and not let the direct and sometimes more informal interactions that occur between judge and counsel in a bench trial create slippage where none should be. We are persuaded that that did not occur in this case, however.[7]

### III.

#### *Constitutionality of the Traffic Stop*

Finally, the appellant contends the traffic stop violated his Fourth Amendment rights, and the suppression court erred in ruling otherwise.

In reviewing the propriety of a ruling on a suppression motion made on Fourth Amendment grounds, we look solely to the record of the suppression hearing. *Cartnail v. State*, 359 Md. 272, 282, 753 A.2d 519 (2000). We give deference to the motion judge's non-clearly erroneous first-level factual findings and determinations of witness credibility. *Wallace v. State*, 373 Md. 69, 78, 816 A.2d 883 (2003); *Jones v.*

---

7. We also point out that when there is a suppression motion immediately followed by a bench trial, counsel must not lose sight of what evidence has been admitted at which proceeding, and must not conduct themselves on the basis of assumed evidence that is not being admitted into the trial record. In this case, for example, there was evidence admitted at the suppression hearing about the amount of currency found on Hinkle's person in the search conducted during the traffic stop. That amount could be significant in a sufficiency of evidence analysis on appellate review after conviction. *Cf. Maryland v. Pringle, supra*, 540 U.S. at 371–72, 124 S.Ct. 795 (noting that the $763 roll of money found in the glove compartment of the car was part of the totality of the circumstances to be considered in assessing probable cause). Here, there was no evidence adduced at trial, however, about the amount of money discovered upon Hinkle's person in the search. Plainly, that fact was known to and in the minds of the trial judge and both counsel during the trial, and would have been admissible in evidence. It is not in the record of the trial, however, and therefore cannot be, and has not been, considered by this Court in its sufficiency review. Careful trial practice would have averted such a gap in the record.

*State,* 343 Md. 448, 457–58, 682 A.2d 248 (1996). We make our own independent constitutional review of the law as it applies to the facts of the case, however. *Wallace, supra,* 373 Md. at 78, 816 A.2d 883.

A traffic stop may be reasonable and hence permissible under the Fourth Amendment when there is probable cause to believe that a traffic violation has occurred. *Rowe v. State,* 363 Md. 424, 433, 769 A.2d 879 (2001). In addition, a traffic stop may be constitutionally permissible under *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), when the police have a reasonable belief that "criminal activity is afoot."

The appellant's argument focuses on Maryland Code (1977, 2002 Repl. Vol.), section 13–411(c)(1) of Transportation Article ("TA"), which provides, *"How license plates fastened; legibility.*—At all times, each registration plate shall be: (1) Maintained free from foreign materials ... and in a condition to be clearly legible...." At the suppression hearing in this case, Sergeant Murray testified that the rear license plate of the Honda was covered with snow and therefore was not legible. Relying on *Rowe v. State, supra,* the appellant argues that driving with a snow-covered license plate is so inconsequential and *de minimis* that, even if it technically is a violation of TA section 13–411(c)(1), it does not furnish probable cause to believe that a traffic violation has occurred.

We see little merit in this argument; more important, the argument is not dispositive of the question whether the stop violated the appellant's Fourth Amendment rights. Sergeant Murray testified at the suppression hearing that, when the Honda was double parked on N. Mulberry Street, and the appellant, after running his errand, opened the door of the car, the smell of burning marijuana came from the area of the car; and there was no one else in the area. This evidence supported a reasonable inference that the source of the burning smell of marijuana was inside the Honda, and hence the further inference that someone inside the Honda was in possession of marijuana, in violation of Maryland law. At that point, Sergeant Murray had a reasonable belief that a person inside the

Honda was committing the crime of possession of marijuana, and it was lawful to make a traffic stop on that basis.[8]

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**

SALMON, J., dissents and files opinion in which KENNEY, ADKINS, and MEREDITH, JJ., join.

SALMON, Judge, dissenting, joined by KENNEY, ADKINS, and MEREDITH, JJ.

On an evening in January 2003, at approximately 10:45 p.m., James Larocca was a front-seat passenger in a car stopped by the Hagerstown police. There was a strong odor of marijuana emanating from the interior of the vehicle. Larocca was asked by a police officer to exit the car. Larocca complied, and so far as the evidence shows, he remained calm and did not act suspiciously. Larocca was searched, but nothing incriminating was found on his person.

The driver (Hinkle) gave his consent for the police to search the vehicle. Under the front passenger seat the police found an opaque bag, inside of which was about $600 worth of marijuana. Larocca was charged with possession with intent to distribute the marijuana found under the seat. He was also charged with possession of that marijuana.[9]

---

8. In the appellant's supplemental memorandum to this Court in advance of *en banc* argument, he argued that the traffic stop was a *Whren* stop (a stop for a genuine traffic violation but based on a subjective motivation by the police officer inspired by a completely different crime, *see Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)); and that this Court should depart company with the United States Supreme Court and hold that *Whren* stops, while constitutionally permissible under the Fourth Amendment, violate Article 26 of the Maryland Declaration of Rights. We shall not discuss this issue because it was not argued in the appellant's original brief, and this Court's en banc order provided only that the parties could supplement their arguments, not present new ones; and it is not necessary to decide, as the traffic stop was valid as a non-*Whren* stop, for the reasons we have explained.

9. The trial judge made it clear in his oral opinion that the convictions were for appellant's possession with intent to distribute (and plain

Larocca was tried by a judge in the Circuit Court for Washington County in September 2004. The evidence relied upon by the State to show that Larocca possessed the marijuana was proof that the controlled dangerous substance was found in close proximity to where he sat (albeit out of his view), coupled with evidence that he was riding in a car where marijuana had recently been smoked. The trial judge found Larocca guilty of both charges and sentenced him to five years' imprisonment, with all but two years suspended in favor of three years' probation.[10]

The majority holds that the evidence was sufficient to convict Larocca of both charges. I take a contrary view.

To be convicted of any offense prohibiting the possession of illegal drugs, the State must prove that the defendant exercised "actual or constructive dominion or control" over the contraband. *See* Section 5–101(u) of the Criminal Law Article of the Annotated Code of Maryland (2002). The State must also prove that the defendant knew "of both the presence and the general character or illicit nature" of the prohibited substance. *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988).

In the case at hand there was no direct evidence that Larocca knew that marijuana was under the passenger side front seat, nor did the State present circumstantial evidence sufficient to infer such knowledge.

Of the four factors set forth in *Folk v. State*, 11 Md.App. 508, 518, 275 A.2d 184 (1971), which are discussed by the majority, only one favors the State, i.e., proximity between the defendant and the contraband. But, as *Taylor v. State*, 346 Md. 452, 697 A.2d 462 (1997), demonstrates, proximity to the contraband, standing alone, is insufficient to demonstrate ei-

---

possession of) the marijuana found under the front seat and not for possession of the marijuana "blunt" that was smoked in appellant's presence.

10. The sentence was to run concurrent with a federal sentence appellant was serving.

ther knowledge of the contraband or the existence of dominion or control by the defendant over the CDS. Nor should proximity to the contraband be sufficient when it is not within the line of vision of the defendant, nor perceptible to him by any other sense.

It is true, as the majority stresses, that the bag of marijuana that Larocca was convicted of possessing was readily accessible to him—if he had reached under his seat. But, there is no evidence from which it could be inferred that he ever reached under the front seat or that he ever had any reason to do so. After all, front seat passengers normally cannot be expected to check routinely under their seats prior to accepting a ride from another.

The majority asserts that there was a second *Folk* factor present, i.e., "the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband." Maj. Op. at 473, 883 A.2d at 994 (citing *Folk*, 11 Md.App. at 518, 275 A.2d 184). The basis for that assertion is:

A fact-finder reasonably could credit that part of the evidence showing that the marijuana blunt was being smoked and shared inside the Honda, *discredit the testimony that the appellant merely watched as that happened, and conclude that the appellant was sharing in the marijuana blunt as well.* Even if the blunt were not passed to the appellant, however, the evidence showed that he was participating in its use by sitting in the closed, small space and breathing marijuana smoke. Certainly, he knew by his senses of sight and smell that marijuana was in the car and was being used.

Maj. Op. at 479–80, 883 A.2d at 997–98 (emphasis added).

The State called two witnesses (Hinkle and Miner), who said that appellant did not participate in the smoking of the marijuana blunt. The trier of fact could, of course, disbelieve everything these two witnesses said. Based on his disbelief, the trial judge purportedly could reasonably conclude that "appellant was sharing in the marijuana blunt as well." This

assertion does not square with what is said later in the majority opinion, i.e., "[o]rdinarily disbelieving evidence is not the same thing as finding evidence to the contrary" (citing *Hayette v. State*, 199 Md. 140, 145, 85 A.2d 790 (1952); *see also Attorney Grievance Comm'n v. Clements*, 319 Md. 289, 298, 572 A.2d 174 (1990)).

> Disbelief of a witness does not ordinarily permit the factfinder to conclude that the opposite of what the witness testified to is true. For example, if a nonparty witness testifies that the light was green for northbound traffic, but the jurors are persuaded that this testimony is false, they cannot turn their disbelief into a finding that the light was actually red for northbound traffic. If the witness is not believed on that point, the jurors "erase the blackboard."

Joseph F. Murphy, Jr., MARYLAND EVIDENCE HANDBOOK, Sec. 409(c) (2d ed. 1993) (citation omitted). *See also Bose Corp. v. Consumers Union of the U.S., Inc.*, 466 U.S. 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)("[D]iscredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.").

In my view, there was not a scintilla of circumstantial evidence from which it could be inferred legitimately that appellant ever participated in the smoking of the marijuana blunt. This is demonstrated by what was said in *Taylor v. State*, 346 Md. 452, 456 (1997), where, as here, there was evidence that others had smoked marijuana in the defendant's presence. As noted by the *Taylor* Court:

> Petitioner's presence in the room where marijuana had recently been smoked does not support a rational inference that Petitioner had possessed the marijuana. Furthermore, the existence of smoke in a room occupied by five people does not alone justify the inference that Petitioner was engaged in the mutual use or enjoyment of the contraband. *Cf. Wilson [v. State]*, 319 Md. [530,] 537–38, 573 A.2d [831,] 835 [(1990)] ("[I]t is elementary that mere presence is not,

*of itself,* sufficient to establish that that person was either a principal or an accessory to the crime.").

*Id.* at 459–60, 697 A.2d 462.

The majority also says that a factor supporting the inference that appellant knew the marijuana was under the front passenger seat was the "marijuana-focused purpose of the trip on the night in question." Maj. Op. at 477, 883 A.2d at 996. The only evidence of the purpose of the trip was supplied by the State through its witness Hinkle. He testified that the reason he drove to the 600 block of Mulberry Street (where officers first saw Hinkle's vehicle) was so that appellant could go to an address in that block and collect money from a man named Gary (last name unknown) who owed appellant money for a car appellant had sold him. That portion of Hinkle's testimony was corroborated by Sergeant Murray, who watched as appellant "entered the house on North Mulberry and then a short time later exited and returned to the Honda." Maj. Op. at 466, 883 A.2d at 990. Testimony as to why appellant exited the car on Mulberry Street was never contradicted. But, even if this portion of Hinkle's or Sergeant Murray's testimony were disbelieved, that disbelief provided no basis for the trial judge to believe that the purpose of the trip was a "marijuana-focused common enterprise." Maj. Op. at 481, 883 A.2d at 999.

I also take issue with the majority's statement that the trial judge could reasonably infer that, in the several minutes that the police followed Hinkle's car prior to stopping it, "Hinkle told the other occupants of the car, with whom he was engaged in the marijuana-focused common enterprise, that the police were coming up behind them, and that there was a window of opportunity for the three to hide whatever marijuana was in the car." Maj. Op. at 482, 883 A.2d at 999. There was no evidence from which a fact-finder could draw such an inference. The scenario suggesting that such a conversation took place is based on nothing more substantive than speculation.

The sufficiency issue in this case boils down to the question of whether a trier of fact could reasonably infer that appellant knew of the presence of the contraband because he sat so near

it. I would answer that question in the negative. "An inference is valid if the inferred fact is more likely than not to be true[,] if the basic fact is true[,] or if there is a rational connection between the basic and the inferred facts." Lynn McLain, MARYLAND PRACTICE: MARYLAND EVIDENCE, § 301.4 at 230 (1995) (footnote omitted). I fail to see how the fact that appellant knew his fellow passengers were smoking marijuana makes it likely that he knew that marijuana, packaged for sale to others, was under the passenger side front seat.

The facts in this case are analogous to those in *Myers v. Commonwealth*, 43 Va.App. 113, 596 S.E.2d 536 (2004). Denna Myers, a paraplegic, was a front seat passenger in a pickup truck that was chased for four miles by a police officer after the truck ran a stop sign. *Id.* at 537. Eventually the truck stopped, but the driver fled. *Id.* Myers remained seated. *Id.* When the truck was searched, a recently stolen .32 caliber revolver was found wrapped in a blanket on the front floorboard of the truck. *Id.* at 537–38. Also found were "blankets, a jacket, just some junk laying in the [passenger side] floorboard." *Id.* at 537. Outside the vehicle, sixty feet from the driver's side of the truck, was a .22 pistol. *Id.* at 538. Myers was convicted of grand larceny and possession of a firearm by a convicted felon. *Id.* at 537–38. The Virginia Court of Appeals reversed Myers's firearm conviction. *Id.* at 542. The Court said, in pertinent part:

Appellant contends no evidence indicated he knowingly and intelligently exercised dominion and control over the weapon. We agree that the evidence was insufficient to prove appellant possessed either of the two weapons found by the deputy.

To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control." *Powers v. Commonwealth*, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). *However, mere proximity to a controlled item, such*

*as a gun or narcotics, is not legally sufficient by itself to establish dominion and control.* Wright v. Commonwealth, 217 Va. 669, 670, 232 S.E.2d 733, 734 (1977); *Fogg v. Commonwealth,* 216 Va. 394, 395, 219 S.E.2d 672, 673 (1975). For example, proof that illegal narcotics were "found in [the] premises or a vehicle owned or occupied by the [accused] is insufficient, standing alone, to prove constructive possession." *Powers,* 227 Va. at 476, 316 S.E.2d at 740.

We find *Hancock v. Commonwealth,* 21 Va.App. 466, 465 S.E.2d at 138 (1995), is instructive here. Hancock was seated behind the driver in the backseat of a car stopped by police. *Id.* at 468, 465 S.E.2d at 139. After Hancock exited the vehicle, the police noticed a gun on the floorboard under the driver's seat. *Id.* The officer testified he could not see the gun until Hancock stepped out of the car because " 'his feet were on top of it.' " *Id.* Additionally, the car was stopped at night, so the lighting precluded a clear view of the gun. *Id.* at 472, 465 S.E.2d at 141. We reversed Hancock's conviction, noting:

No evidence established that Hancock ever held the firearm, saw it, knew it was present, or exercised any dominion and control over it. *See Powers,* 227 Va. at 476, 316 S.E.2d at 740. *The facts established no more than a mere suspicion that the firearm was possessed by Hancock or that he knew the firearm was under the driver's seat.* The evidence must rise beyond "the realm of probability and supposition." *Hall v. Commonwealth,* 225 Va. 533, 537, 303 S.E.2d 903, 905 (1983). " *'Circumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a [guilty] verdict* . . . beyond a reasonable doubt.' " *Crisman [v. Commonwealth],* 197 Va. [17,] 21, 87 S.E.2d [796,] 799 [(1955)] (quoting *Powers v. Commonwealth,* 182 Va. 669, 676, 30 S.E.2d 22, 25 (1944)). Proof that the firearm was located close to Hancock was not sufficient to prove the elements of the offense beyond a reasonable doubt. *See Jones v.*

*Commonwealth,* 17 Va.App. 572–74, 439 S.E.2d 863, 864 (1994).

*Id.* at 472, 465 S.E.2d at 141–42.

The Commonwealth here presented no evidence that appellant knew the weapon was hidden in the blanket.  It is uncontroverted that the gun was hidden from sight.  Deputy Sheriff Ford characterized the floorboard where the blanket with the .32 revolver was found as an "upheaval of junk."  *Appellant made no furtive gestures toward the firearm nor were there any acts, statements, or conduct indicating appellant exercised dominion and control over the firearm.*[11] The evidence proved only that appellant was an occupant of a vehicle and in close proximity to a hidden revolver.  This circumstantial evidence is legally insufficient to prove possession.  *See Powers,* 227 Va. at 476, 316 S.E.2d at 740; *Hancock,* 21 Va.App. at 472, 465 S.E.2d at 141–42. The fact finder unreasonably inferred appellant possessed the revolver.

*Id.* at 540 (emphasis added).

The holding in *Myers* is consistent with cases from other jurisdictions.  *See, e.g., United States v. Stanley,* 24 F.3d 1314, 1317–21 (11th Cir.1994)(convictions reversed where passenger was merely seated in the front seat, driver and second passenger exited vehicle to conduct drug transaction, drugs were secreted in the dashboard, and no evidence was presented concerning front seat passenger's actions or demeanor other than that she was in the front passenger seat); *United States v. Kelso,* 942 F.2d 680, 681–82 (9th Cir.1991)(rejecting government's argument, offered in support of a sentencing enhancement, that the defendant passenger constructively possessed a

---

11.  In *Myers,* the Virginia Court of Appeals said:
    The record does not detail the extent of appellant's disability beyond [Deputy] Ford's testimony that appellant was unable to walk and that he was transported to the sheriff's office by an ambulance.
    596 S.E.2d at 537 n. 1.
    Nothing in the *Myers* opinion suggests, as the majority intimates (Maj. Op. at 482–83 n. 6, 883 A.2d at 999–1000 n. 6), that the *Myers* Court was swayed by the fact that Myers's legs were immobile.

gun discovered behind the driver's seat because, "[a]lthough [the defendant] may have had access to the gun, there is no evidence he owned it, or even was aware of its presence"); *United States v. Whitfield,* 629 F.2d 136, 142–43 (D.C.Cir.1980)(finding evidence sufficient that the defendant driver, who owned the car, constructively possessed pistols under the driver's and passenger's seats but holding that the evidence was insufficient as to the defendant passenger); *United States v. Ferg,* 504 F.2d 914, 916 (5th Cir.1974) (evidence insufficient to sustain defendant's conviction for possession of marijuana with intent to distribute where defendant was the front seat passenger, marijuana was found secreted in the back seat, and there was no other evidence linking defendant to the vehicle, the driver, or the marijuana); *Gamble v. State,* 82 Ark.App. 216, 105 S.W.3d 801, 803–04 (2003) (where front-seat passenger neither owned nor controlled vehicle and did not act suspiciously, evidence insufficient to sustain conviction for possession of handgun found under defendant's seat because "a defendant's mere proximity to an item not in plain view is not proof that the defendant constructively possessed the item") (citation omitted).

Judges KENNEY, ADKINS, and MEREDITH have advised that they share in the views expressed in this dissent.