*Angela Ann Grimm v. State of Maryland*, No. 49, September Term 2015, Opinion by
Greene, J.

## CRIMINAL LAW — EXTRAJUDICIAL CONFESSION — CORROBORATION RULE

An extrajudicial confession must be corroborated by independent evidence relating to or
establishing the corpus delicti. Under § 3-602 of the Criminal Law Article, the corpus delicti
for the crime of sexual abuse of a minor is evidence of sexual molestation or exploitation of
a minor. No independent evidence was offered to establish the corpus delicti. Accordingly,
the extrajudicial confession of the defendant was neither adequately corroborated, nor a
proper substitute for the corpus delicti of the crime charged. As a result, there was
insufficient evidence presented to enter a verdict of guilty beyond a reasonable doubt.

## CRIMINAL LAW — PERMISSIBLE INFERENCES — DISBELIEF OF NON-PARTY WITNESS'S TESTIMONY

The general rule is that disbelief of a witness does not ordinarily permit the fact-finder to
conclude that the opposite of what the witness testified to is true. If a fact-finder disbelieves
the testimony of a witness, the fact-finder must discredit that testimony, and assign it no
weight in consideration of the ultimate issue. An exception, however, applies to a party
witness. If the fact-finder disbelieves a party witness's denial of scienter, i.e., guilty
knowledge, a permissible inference of scienter may be drawn based on other additional
evidence. It may not be drawn based solely on the party witness's denial.

Circuit Court for Washington County
Case No. 21-K-13-048610
Argued: January 8, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 49
September Term, 2015

---

ANGELA ANN GRIMM

v.

STATE OF MARYLAND

---

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

---

Opinion by Greene, J.
Watts, J., dissents.

---

Filed: May 4, 2016

*Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

In this case, we address the rule requiring corroboration of a defendant's extrajudicial confession, as well as what permissible inferences a fact-finder may deduce based on testimony from a non-party witness in the event the fact-finder disbelieves that testimony.

Quentin Anthony Grimm ("the alleged victim" or "Quentin") moved in with his biological father, John Grimm, and his stepmother, Angela Ann Grimm ("Petitioner"), in 2009 when Quentin was sixteen years old. In early 2013, a deputy assigned to a local high school came into possession of an anonymous letter that raised concerns about the relationship between Quentin and Petitioner. At this time, Quentin was nineteen years old. The letter was turned over to Detective Casey Nogle of the Washington County Sheriff's Office. Detective Nogle initiated an investigation and interviewed Quentin. That conversation prompted further concerns. Detective Nogle called Petitioner, and requested she come to the Sheriff's Office for an interview.

On February 6, 2013, Detectives Nogle and Jared Barnhart interviewed Petitioner. The session was audio and video recorded. When Detective Nogle showed Petitioner the anonymous letter, she immediately confessed that she did not know the paternity of her two year old son, Logan. Petitioner admitted that she had had a sexual relationship with her stepson, which began shortly after he moved in when he was sixteen years old, and that the relationship ended a couple months prior to the interview. As a result of that relationship, Petitioner stated that she was unsure of the paternity of her two youngest children, but that she suspected Quentin was Logan's father. Petitioner further confessed that she had sexual intercourse five to ten times with her stepson. The detectives provided Petitioner with several pages of Facebook communications between Quentin and "Faith Evans." When

asked whether Petitioner was Faith Evans, she responded affirmatively.

The Circuit Court for Washington County ("Circuit Court") returned an indictment against Petitioner charging her with, among other things, three counts of sexual abuse of a minor pursuant to Md. Code (2002, 2012 Repl. Vol.), § 3-602 of the Criminal Law Article.[1] At trial, the State offered into evidence the testimony of Detective Nogle and Quentin as witnesses, and Petitioner's recorded confession. Detective Nogle discussed his investigatory process, which resulted in Petitioner's confession on the day of the interview. The State immunized Quentin and obtained a court order compelling him to testify in the State's case. On direct examination, Quentin answered a few preliminary questions, but when asked about pertinent details of the investigation, including whether he had ever had a sexual relationship with Petitioner, he responded that he did not recall the details or events. Defense Counsel elected not to cross-examine Quentin. When the State rested its case in chief, Defense Counsel moved for a judgment of acquittal. The Circuit Court denied Petitioner's motion. The Defense Counsel rested, and, at the end of the introduction of all the evidence, renewed the motion for a judgment of acquittal. The motion was again denied, and, after closing arguments, jury deliberations began. Petitioner was convicted of two of the three counts of sexual abuse of a minor. Petitioner appealed to the intermediate appellate court. In an

---

[1] Specifically, Petitioner was charged with violating § 3-602(b)(2) of the Criminal Law Article, which states "[a] household member or family member may not cause sexual abuse to a minor." Sexual abuse is defined, under § 3-602(a)(4)(i), as "an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not." Examples of sexual abuse include, but are not limited to, incest; rape; sexual offense in any degree; sodomy; and unnatural or perverted sexual practices. *See* § 3-602(a)(4)(ii) of the Criminal Law Article.

unpublished opinion, the Court of Special Appeals affirmed the convictions. We granted

Petitioner's petition for a writ of certiorari. *Grimm v. State*, 444 Md. 638, 120 A.3d 766

(2015). For the reasons explained below, we hold there was insufficient evidence to sustain

the convictions, because the rule of corroboration of an extrajudicial confession was not

satisfied. Accordingly, we reverse the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Quentin moved in with his father, John, stepmother, Petitioner, and brother,

Derrick. At this time, Quentin was sixteen years old. In early 2013, Troy Lipenski, a deputy

assigned to a local high school as a School Resource Officer, contacted Detective Nogle, and

released to him an anonymous letter, which raised concerns about the nature of the

relationship between Quentin and Petitioner. Further concerns were raised when Detective

Nogle spoke with Quentin about the anonymous letter. This prompted the detective to

continue the investigation, and he called Petitioner in order to arrange an interview at the

Sheriff's Office.

On February 6, 2013, Detectives Nogle and Barnhart conducted the interview. After

being read her Miranda rights, Petitioner signed a Miranda waiver, and consented to the

session being audio and video taped. Preliminary questioning revealed that Petitioner, in

addition to her stepson, had three biological children with her husband, Mr. Grimm: Derrick,

age thirteen; Logan, age two; MacKenzie, seven weeks old. After being shown the

anonymous letter, Petitioner confessed that she previously had sexual intercourse with

Quentin five to ten times, beginning when he was sixteen years old. She stated that their

3

relationship ended a few months before the date of the interview; Quentin was nineteen years old at this time. Petitioner further confessed that she was unsure of the paternity of her two youngest children, but that she suspected Quentin was Logan's father. When the detectives showed Petitioner fourteen pages of Facebook communications between Quentin and "Faith Evans," she admitted that Faith Evans was her Facebook alias. Specifically, Petitioner stated that Faith Evans was the name "we were going to name Logan if it was a girl. So we made it up."

The State filed an indictment in the Circuit Court. Petitioner was charged with three counts of sexual abuse of a minor by a household member under § 3-602(b)(2) of the Criminal Law Article, and two counts of third degree sexual offense pursuant to Md. Code (2002, 2012 Repl. Vol.), § 3-307 of the Criminal Law Article.

The case proceeded as a trial by jury. The State entered *nolle prosequi* to the two counts of third degree sexual offense. At trial, the State called Detective Nogle as a witness, and he testified about his investigation. He explained how he came into possession of the anonymous note, and that the content of the letter prompted him to speak with Quentin. That conversation, in turn, caused him to investigate further. He stated that on the day of the interview, he and Detective Barnhart read Petitioner her Miranda rights, obtained a Miranda waiver, and her consent to record the interview. A portion of the audio and video recording of Petitioner's confession was then played for the jury. The recording was stopped at the point when Petitioner was questioned about the Facebook communications. On cross-examination, Detective Nogle stated that he did not request a search warrant to obtain a

4

paternity test, because Petitioner admitted that she did not know the paternity of Logan. On redirect, Detective Nogle stated that paternity was not an element of the crime of sexual abuse of a minor.

The State called Quentin as its next witness. In preliminary questioning, Quentin stated that he moved in with his father and Petitioner in the Fall of 2009. He also identified Petitioner as his stepmother.[2] In pertinent part, the following colloquy ensued between the State prosecutor and Quentin:

> Q. Now, after moving back to Maryland into a residence with the Defendant and other persons did there come a time when you began a relationship, sexual relationship, with Angela Grimm?
> A. I don't remember.
> Q. You don't remember anything?
> A. No.
> Q. Okay. Well do you remember speaking with Detective Nogle and Detective Barnhart earlier this year?
> A. No.
> Q. You don't remember that?
> A. No.
> Q. Do you remember telling them you thought Logan was your child?
> A. No.
> Q. Okay. But you remember Logan, right?
> A. Yeah.
> Q. Who is Logan?
> A. My little brother.
> Q. Okay. So now he's your little brother and earlier this year he was possibly your son. Is that what you said?
> A. No, I don't remember saying that.
> Q. So, the only answers you're going to give today is you don't remember anything about your relationship with Angela Grimm back in 2010, 2009, [and] 2011?

---

[2] At this point, the jury was excused for a brief recess. The State offered Quentin immunity, filed a motion to compel his testimony, and the Circuit Court granted the motion. The jury was then seated.

A. Yeah.

Q. Have you ever had sexual intercourse with Angela Grimm?

A. No, I don't remember.

Q. You said no. Is that – – You never had sexual intercourse with Angela Grimm?

A. I don't remember.

Q. Mr. Grimm, are you telling us the truth today?

A. Yes.

Q. Um hum. Court's indulgence. How would you describe your relationship with Angela Grimm?

A. I don't remember

\* \* \*

Q. What's your relationship with Angela Grimm like today?

A. Mother.

Q. You remember that?

A. Remember what?

Q. How about yesterday? Do you remember what your relationship was like then?

A. A mother.

Q. Have you ever engaged in Facebook postings?

A. Yes.

Q. Have you posted things back and forth with Angela Grimm?

A. Yes.

Q. Did you – – Did she use her real name?

A. No.

Q. What name [did] she use?

A. Faith.

Q. Why did she use that?

A. I don't know.[3]

\* \* \*

Q. Okay. Did you use your real name Quentin A. Grimm on your Facebook?

A. Yes.

\* \* \*

Q. Do you recall on Facebook sending a, whatever it's called to Faith, the person you identified as the Defendant, that you love her, want to be with her, and that she is the only one you want in life?

A. I don't remember that.

---

[3] At this point, the State asked the trial judge for permission to treat Quentin as a hostile witness. The judge granted the request, and the direct examination continued.

Quentin stated that he moved out in December 2012. The State completed its direct examination of Quentin, and Defense Counsel elected not to cross-examine him. The State rested its case, and the jury was excused.

Defense Counsel moved for a judgment of acquittal on the ground that the State failed to make a prima facie showing as to each element of each count. Defense Counsel maintained that the only evidence of the corpus delicti[4]—sexual act(s) between Petitioner and Quentin—was derived from Petitioner's confession, and was not corroborated by independent evidence, namely, Quentin's testimony. Moreover, Defense Counsel argued, "Based upon [Quentin's] answers there's never been an admission or a concession by him which would serve as the corroboration for the body of that crime."

The State disagreed, and asserted that there was sufficient corroboration, because Quentin's testimony proved beyond a reasonable doubt two of the three elements of the crime of sexual abuse of a minor: Petitioner was a "household member," and Quentin was sixteen years old at the time the sexual relationship began. The State argued, "All we have to [do] is show opportunity and we showed two elements."

The Circuit Court denied the motion for a judgment of acquittal, because it found

---

[4] The Latin term "corpus delicti" translates into the "body of the crime" and refers to "[t]he fact of a transgression; ACTUS REUS." BLACK'S LAW DICTIONARY 419 (Bryan A. Garner ed., 10th ed. 2014). The corpus delicti for the crime of sexual abuse of a minor, pursuant to § 3-602 of the Criminal Law Article, is evidence of sexual molestation or exploitation of a minor. The "corpus delicti rule" is a "doctrine that in order to secure a conviction, the prosecution must establish the corpus delicti with corroborating evidence. [] The doctrine prohibits the prosecution from proving the corpus delicti based solely on a defendant's extrajudicial statements." BLACK'S, *supra* note 4, at 420.

sufficient corroboration. The trial judge stated "there has to be some corroboration but not some corroboration of each and every element of a crime." After Petitioner elected not to testify, Defense Counsel rested, and renewed its motion for judgment of acquittal. The Circuit Court denied the motion. The jury returned a verdict of guilty to two counts of sexual abuse of a minor by a household member.

Petitioner appealed to the Court of Special Appeals on the issue of whether her confession was sufficiently corroborated in order to sustain her convictions. In an unreported opinion, the intermediate appellate court affirmed the convictions. It stated: "Quentin's testimony was, to be sure, independent of the confession and significantly bolstered its credibility, as it directly concerned the *corpus delicti*, *i.e.*, whether he and [the Petitioner] were engaged in a sexual relationship." The intermediate appellate court cited to *Larocca v. State*, 164 Md. App. 460, 883 A.2d 986 (2005), and stated that Quentin's "preposterous testimony" was sufficient to corroborate Petitioner's confession. It held that the trial court did not err in denying the motion for judgment of acquittal, or sending the case to the jury.

We granted *certiorari*, *Grimm v. State*, 444 Md. 638, 120 A.3d 766 (2015), to answer the following questions:

> (1) May a witness's testimony that he does not remember whether an act occurred constitute sufficient corroboration of an extra-judicial confession by the defendant that the act in fact occurred?
>
> (2) Can a criminal defendant's uncorroborated confession constitute sufficient evidence to support a conviction for sexual abuse of a minor?

For the reasons stated below, we shall answer both questions in the negative. Accordingly,

we reverse the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

Ordinarily, "[t]his Court reviews a question regarding the sufficiency of the evidence in a jury trial by asking whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cox v. State*, 421 Md. 630, 656–57, 28 A.3d 687, 702–03 (2011) (citations and internal quotations marks omitted).

"In determining whether evidence was sufficient to support a conviction, an appellate court 'defer[s] to any possible reasonable inferences [that] the trier of fact could have drawn from the . . . evidence[.]'" *Jones v. State*, 440 Md. 450, 455, 103 A.3d 586, 589 (2014) (quoting *Hobby v. State*, 436 Md. 526, 538, 83 A.3d 794, 801 (2014)). "We defer . . . and need not decide whether the jury could have drawn other inferences from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence." *State v. Mayers*, 417 Md. 449, 466, 10 A.3d 782, 791–92 (2010) (citing *State v. Smith*, 374 Md. 527, 557, 823 A.2d 664, 682 (2003)). In *Jones v. State*, we stated:

> In performing its fact-finding role, the trier of fact decides which evidence to accept and which to reject. Therefore, in that regard, it is not required to assess the believability of a witness's testimony on an all or nothing basis; it may choose to believe only part, albeit the greatest part, of a particular witness's testimony, and disbelieve the remainder.

343 Md. 448, 460, 682 A.2d 248, 254 (1996) (citing *Muir v. State*, 64 Md. App. 648, 654, 498 A.2d 666, 668–69 (1985)).

## DISCUSSION

9

It is settled law that "Maryland follows the general rule that, as a matter of substantive law, a criminal conviction cannot rest solely on an uncorroborated confession." *Miller v. State*, 380 Md. 1, 46, 843 A.2d 803, 829 (2004). The rule of corroboration requires independent substantiation of an extrajudicial confession made by a defendant. In *Bradbury v. State*, we stated:

> It is, of course, well settled that an extrajudicial confession of guilt by a person accused of crime, unsupported by other evidence, is not sufficient to warrant a conviction. We have therefore consistently held that the extrajudicial confession must be supported by evidence, independent of the confession, which relates to and tends to establish the *corpus delicti*, *i.e.*, the facts that are necessary to show that a crime has been committed.

233 Md. 421, 424, 197 A.2d 126, 127 (1964) (internal citations omitted). Furthermore, "independent evidence . . . need not be full and positive proof of the *corpus delicti* and may be small in amount, if such proof, when considered with the confession, convinces the jury beyond a reasonable doubt of the guilt of the accused." *Bradbury*, 233 Md. at 425, 197 A.2d at 128 (citation and internal quotation marks omitted). "[T]he *corpus delicti* may be proved by circumstantial evidence when direct evidence is not available . . . ." *Bradbury*, 233 Md. at 424–25, 197 A.2d at 128. *See also Ballard v. State*, 333 Md. 567, 577, 636 A.2d 474, 479 (1994) (discussing the "national overview of the corroboration requirement").

Petitioner was convicted under § 3-602(b)(2) of the Criminal Law Article of sexual abuse of a minor by a household member.[5] "Sexual abuse" is defined, in § 3-602(a)(4)(i),

---

[5] A "household member" is defined as "a person who lives with or is a regular presence in a home of a minor at the time of the alleged abuse." Md. Code (2002, 2012 Repl. Vol. , 2015 Cum. Supp.), § 3-601(a)(4) of the Criminal Law Article.

as "an act that involves sexual molestation or exploitation[6] of a minor, whether physical injuries are sustained or not." The corpus delicti of this crime is sexual abuse. Sexual abuse includes, but is not limited to, incest, rape, sexual offense in any degree, sodomy, and unnatural or perverted sexual practices. *See* § 3-602(a)(4)(ii) of the Criminal Law Article. "This list is not exhaustive. To constitute sexual abuse, the conduct underlying the charge need not be among the exemplars listed in § 3-602(a)(4)(ii) . . . ." *Schmitt v. State*, 210 Md. App. 488, 497, 63 A.3d 638, 643 (2013).

At trial, the State was required to prove beyond a reasonable doubt: (1) Petitioner was a household member; (2) Quentin was a minor; and (3) that Petitioner sexually molested or exploited the alleged victim by means of a specific act. *See* § 3-602 of the Criminal Law Article. As evidence, the State placed into evidence a portion of Petitioner's confession, which included her admission that she had a sexual relationship with her minor stepson, and that as a result of that relationship, she was unsure of Logan's paternity. To corroborate that testimony, the State called the alleged victim to testify. Although Quentin acknowledged that he lived with his father and Petitioner from the Fall of 2009 until December 2012, he did not remember details relating to the corpus delicti, i.e., sexual abuse. Quentin asserted that he did not remember: (1) whether he had a sexual relationship or intercourse with Petitioner, (2) whether he spoke to Detectives Nogle and Barnhart, and (3) whether he told the detectives of his belief that he was Logan's father. Furthermore, Quentin replied, "I don't

---

[6] "[E]xploitation requires that the defendant 'took advantage of or unjustly or improperly used the child for his or her *own* benefit.'" *Walker v. State*, 432 Md. 587, 622, 69 A.3d 1066, 1087 (2013) (quoting *Degren v. State*, 352 Md. 400, 426, 722 A.2d 887, 900 (1999)).

11

know" when the prosecutor asked whether he knew why Petitioner selected Faith Evans as her Facebook alias. In other words, Quentin did not affirmatively testify that sexual abuse, as defined by the statute, occurred.

Petitioner argues that the evidence is insufficient to support her convictions, because her confession of sexual abuse of a minor was not corroborated by independent evidence. It is her position that the Court of Special Appeals erred in determining that Quentin's testimony provided sufficient corroboration. That ruling, she argues, "ignores the holding of decades of case law" requiring corroboration of an extrajudicial confession. She correctly identifies that the State did not attempt to impeach Quentin with any prior inconsistent statement he made to the detectives. Likewise, the State did not present other corroborating documentation, such as medical or physical evidence, to support its contention that Petitioner sexually abused the alleged victim. Petitioner points out that the rule of corroboration of an extrajudicial confession requires independent evidence of the corpus delicti, and that the State failed to satisfy this rule, because it provided no evidence that an act involving sexual molestation or exploitation of a minor occurred. Furthermore, Petitioner asserts that Quentin's testimony concerning his inability to recall whether he had a sexual relationship with Petitioner did not establish independent evidence of the corpus delicti. In regard to what inferences may be drawn from Quentin's testimony, Petitioner stated: "Even if the Court found it incredulous that Quentin could not remember . . . it does not logically follow that the appropriate conclusion is that the event necessarily occurred." In her brief, Petitioner states that if a fact-finder does not believe the testimony of a non-party witness—here,

Quentin—the jury must discredit that testimony, because, as a matter of law, "[n]o other inferences or speculation are permitted."

It is the State's position that the Court of Special Appeals was correct, in its reliance on *Larocca v. State*, 164 Md. App. 460, 485, 883 A.2d 986, 1001 (2005), to hold that Quentin's testimony was so "preposterous" that it corroborated the confession. In its brief, the State discusses the history of the corpus delicti rule, and posits that "the rule was designed only to preclude confessions to, and convictions for, fictitious crimes . . . ." (citing David A. Moran, *In Defense of the Corpus Delicti Rule*, 64 OHIO ST. L.J. 817, 836 (2003)). As such, the State argues that "there was no danger here that [Petitioner] was being convicted of a crime that did not occur" because Quentin's testimony "was so obviously false, and so devoid of logic or credibility, that it served to bolster the credibility of [Petitioner's] confession with regard to the *corpus delicti* of the crime with which she was charged." Acknowledging the general rule that "[o]rdinarily disbelieving evidence is not the same thing as finding evidence to the contrary" the State argues that the scienter[7] exception—"on questions of scienter[,] reason for disbelieving evidence denying scienter may also justify finding scienter"—is applicable in the instant case. *Hayette v. State*, 199 Md. 140, 145, 85 A.2d 790, 792 (1952) (citing *Shelton v. State*, 198 Md. 405, 411, 84 A.2d 76, 80 (1951)). For

---

[7] The term "scienter" is defined as a "degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp. as a ground for civil damages or criminal punishment." BLACK'S, *supra* note 4, at 1547.

support, the State cites to cases where this Court held it was permissible for a fact-finder to disbelieve the testimony of a defendant who denied scienter, and instead infer scienter due to additional considerations. *See Kolker v. State*, 230 Md. 157, 186 A.2d 212 (1962); *Young v. State*, 220 Md. 95, 151 A.2d 140 (1959); *Hayette v. State*, 199 Md. 140, 85 A.2d 790 (1952). The State disagrees with Petitioner that the scienter exception has limited application, and can only be used against testifying defendants or co-defendants. Citing to *Larocca*, 164 Md. App. at 485, 883 A.2d at 1001, the State asserts that "it is not whether the witness is a party that makes the difference, rather it is whether the witness is 'neutral,' *i.e.*[,] whether the witness has an established bias or relationship with the parties."

## The Corroboration Rule and Sufficiency of Evidence

There was insufficient evidence on the record to submit this case to the jury for a trial. An extrajudicial confession must be corroborated by independent evidence of the corpus delicti: the body of the crime. The corroboration rule plays a critical role in maintaining the integrity of our criminal justice system. "Generally an uncorroborated confession does not establish as a matter of law the commission of [a] crime beyond a reasonable doubt. The purpose of the rule requiring corroboration of confessions is to guard against convictions based upon untrue confessions alone." *Bollinger v. State*, 208 Md. 298, 305, 117A.2d 913, 916 (1955) (citing *Warszower v. United States*, 312 U.S. 342, 61 S. Ct. 603, 85 L. Ed. 876 (1941)). "The thrust of the principle is to prevent mentally unstable persons from confessing

14

to, and being convicted of, crimes that never occurred." *Borza v. State*, 25 Md. App. 391, 403, 335 A.2d 142, 150 (1975). *See also Riggins v. State*, 155 Md. App. 181, 234, 843 A.2d 115, 146 (2004) ("[T]he limited purpose of the corroboration requirement is to prevent a mentally unstable person from confessing to and being convicted of a crime that never occurred.") (internal quotation marks omitted). In *Wood v. State*, we again stated the importance of this rule:

> The courts, in recalling cases in which false confessions have been made through duress or psychopathic aberration, have considered the danger of accepting a confession of an accused person without any evidence other than the confession that the crime in question has been committed. The character of the evidence to prove the *corpus delicti*, and its sufficiency for that purpose, depend largely upon the circumstances of each particular case. It may be stated as a general proposition that it is essential in all criminal prosecutions to prove the element that constitutes the crime.

192 Md. 643, 649–50, 65 A.2d 316, 319 (1949). In sum, the corroboration rule serves important policy purposes.

"This Court reviews a question regarding the sufficiency of the evidence in a jury trial by asking whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cox v. State*, 421 Md. 630, 656–57, 28 A.3d 687, 702 (2011) (citations and internal quotations marks omitted). "In determining whether evidence [is] sufficient to support a conviction, an appellate court 'defer[s] to any possible reasonable inferences [that] the trier of fact could have drawn from the . . . evidence[.]'" *Jones v. State*, 440 Md. 450, 455, 103 A.3d 586, 589 (2014) (quoting *Hobby v. State*, 436 Md. 526, 538, 83 A.3d 794, 801

15

(2014)).

Here, the evidence before the jury consisted of an excerpt of Petitioner's recorded confession as well as Quentin's testimony. Petitioner confessed to having sexual intercourse with her minor stepson at least five to ten times. The confession relates to the corpus delicti of sexual abuse of a minor, however, an extrajudicial confession by itself is insufficient to establish the corpus delicti. The corroboration rule requires additional corroborating evidence:

> There is no question that an extrajudicial confession of guilt by a person accused of crime, uncorroborated by any other evidence, is not sufficient to warrant a conviction. The law requires that a jury be convinced beyond a reasonable doubt of the defendant's guilt, and generally an uncorroborated confession does not as matter of law establish the commission of crime beyond a reasonable doubt.

*Wood*, 192 Md. at 649, 65 A.2d at 319 (internal citations omitted). The independent evidence offered by the State to corroborate the confession was Quentin's testimony. The State is correct that the alleged victim's testimony corroborated two of the three elements of the crime of sexual abuse of a minor: Petitioner was a household member, and Quentin, during the relevant times, was a minor.[8] The State posits that Quentin's inability to recall details, such as whether he and Petitioner had a sexual relationship, is "preposterous" and that the inconceivability of such testimony allowed the jury to infer that a sexual act—the

---

[8] On direct examination, Quentin identified the time period he lived with his father and Petitioner; he identified Petitioner as a household member from 2009 to 2012; he identified Logan as his younger brother; he confirmed that he communicated with Petitioner on Facebook; and he identified their respective Facebook names.

16

corpus delicti—did, in fact, occur. The Court of Special Appeals agreed, and stated "Quentin's testimony was, to be sure, independent of the confession and significantly bolstered its credibility, as it directly concerned the *corpus delicti*, *i.e*., whether he and [Petitioner] were engaged in a sexual relationship." We disagree. "[T]he extrajudicial confession must be supported by evidence, independent of the confession, which relates to and tends to establish the *corpus delicti*, *i.e*., the facts that are necessary to show that a crime has been committed." *Bradbury v. State*, 233 Md. 421, 424, 197 A.2d 126, 127 (1964) (citations omitted). To be sure, on the direct examination of Quentin, the State asked questions concerning the corpus delicti, but Quentin's responses—he did not remember—did not "relate to" or "establish" the corpus delicti. The excerpt of Petitioner's recorded confession was the only evidence of the alleged sexual relationship between Quentin and Petitioner. This without more cannot satisfy the corroboration rule. In *Bradbury*, we explained:

> The rules governing the substantiation of extrajudicial statements in this State . . . recognize that the supporting or substantiating circumstances need not establish the *corpus delicti* beyond a reasonable doubt; that the *corpus delicti* may be proved by circumstantial evidence when direct evidence is not available; that proof of the *corpus delicti* need not be full and positive but may be established by the circumstances of each particular case; and that the **supporting evidence is sufficient to establish the *corpus delicti* if, when considered in connection with the confession or admission, it satisfies the trier of facts beyond a reasonable doubt that the offense charged was committed and that the accused committed it.** It is clear, therefore, that the independent evidence necessary to support the confession need not be full and positive proof of the *corpus delicti* and may be small in amount, if such proof, when considered with the confession, convinces the jury beyond a reasonable doubt of the guilt of the accused.

17

233 Md. at 424–25, 197 A.2d at 128 (citations and internal quotation marks omitted) (emphasis added). In *Ballard v. State*, 333 Md. 567, 577–78, 636 A.2d 474, 478–79 (1994), we dedicated significant time to discussing the corroboration rule. In pertinent part, we focused on the analysis of the corroboration rule made by MCCORMICK ON EVIDENCE:

> To establish guilt in a criminal case, the prosecution must ordinarily show that (a) the injury or harm constituting the crime occurred; (b) this injury or harm was done in a criminal manner; and (c) the defendant was the person who inflicted the injury or harm. Wigmore maintains that *corpus delicti* **means** only the first of these, that is, "**the fact of the specific loss or injury sustained**," and does not require proof that this was occasioned by anyone's criminal agency . . . . Most courts, however, define *corpus delicti* as involving both (a) and (b). This means that the corroborating evidence must tend to show the harm or injury and that it was occasioned by criminal activity.
>
> * * *
>
> The traditional approach has been to require that the elements of the offense be carefully distinguished and that the corroborating evidence tend to show each of those elements. A growing number of courts, however, are abandoning the strict requirement that the corroborating evidence tend to prove all elements of the *corpus delicti*. **Thus the corroborating evidence need only tend to show the "major" or "essential" harm involved in the offense charged and not all of the elements technically distinguished.**

*Ballard*, 333 Md. at 577–78, 636 A.2d at 479 (citing 1 MCCORMICK ON EVIDENCE 557–59 (John W. Strong ed., 4th ed. 1992)) (internal quotation marks omitted) (emphasis added). A fact-finder could not reasonably infer from Quentin's testimony that Petitioner sexually abused Quentin. Absent from his responses was the "major" or "essential" harm involved in the offense charged: evidence of sexual abuse.

In *Lemons v. State*, the Court of Special Appeals reversed a conviction of first-degree murder, because, although the defendant confessed, the State's evidence was too slim to

18

corroborate that crime. 49 Md. App. 467, 433 A.2d 1179 (1981). "A confession simply cannot fortify its own truth." *Lemons*, 49 Md. App. at 473, 433 A.2d at 1183. The circumstantial evidence only proved that the alleged victim failed to return to work. The State failed to corroborate the corpus delicti of murder. "[E]vidence is only 'corroborative,' . . . if it touches or concerns the *corpus delicti* and—in that way—fortifies the truth of the accompanying confession. **Evidence that may fortify the confession without relation to the *corpus delicti* will not be deemed 'corroborative.'**" *Lemons*, 49 Md. App. at 472, 433 A.2d at 1182–83 (emphasis added). Like *Lemons*, there is insufficient corroborating evidence of the corpus delicti. Quentin's responses—"I don't remember"—to pertinent questions concerning the alleged sexual abuse did not corroborate the body of the crime alleged.

In *Duncan v. State*, the State's failure to corroborate an extrajudicial confession led to a reversal of convictions for child abuse and second degree sexual offense due to the insufficiency of evidence. 64 Md. App. 45, 494 A.2d 235 (1985). The State alleged that the defendant had sexually abused his five year old son. At trial, the State introduced the defendant's extrajudicial confession, and called the trooper and the child's mother to testify; the minor's out-of-court accusatory statement came in through the mother's testimony. *Duncan*, 64 Md. App. at 54, 494 A.2d at 239. After being convicted, the defendant challenged the sufficiency of the evidence. The intermediate appellate court reversed the convictions, because of the lack of independent corroborative evidence of the defendant's

extrajudicial confession. The out-of-court accusatory statement was admissible only in conjunction with the defendant's implied admission of guilt, but the statement was "not substantive evidence of the fact asserted by the child." *Duncan*, 64 Md. App. at 54, 494 A.2d at 239. *But see Bradbury v. State*, 233 Md. 421, 197 A.2d 126 (1964) (holding there was sufficient evidence to uphold a sodomy conviction, based, in part, on the minor victim's testimony against the defendant).

In the case *sub judice*, the State failed to satisfy the rule of corroboration for extrajudicial confessions. As mentioned above, Quentin's testimony corroborated two elements of the crime of sexual abuse of a minor, but his responses did not corroborate the major or essential element: sexual abuse. Quentin's assertion that he could not recall, among other things, whether he had ever had a sexual relationship or intercourse with Petitioner, was not sufficient evidence to corroborate that the alleged act(s) did, in fact, occur. In other words, the alleged victim's responses did not constitute substantive evidence that Petitioner had sexually abused him. Fatal to the State's case is the absence of any other independent circumstantial or direct evidence corroborating the "essential" harm to Quentin, i.e., sexual abuse. *See Ballard*, 333 Md. at 578, 636 A.2d at 479 (approving the rule requiring independent corroboration of "only the major or essential harm involved in the charged offense"). Because the State introduced no other corroborating evidence, there was insufficient evidence for a reasonable jury to find beyond a reasonable doubt that Petitioner sexually abused Quentin. The trial judge erred in denying Petitioner's motion for a judgment

of acquittal. *See Morgan v. State*, 134 Md. App. 113, 126, 759 A.2d 306, 313 (2000) ("It is the judge's role to determine whether the evidence that the State has presented is legally sufficient to warrant sending the case to the jury."). Furthermore, even if the jury disbelieved Quentin's inability to recall certain details, the jury could only discredit that testimony. It could not assign weight to discredited testimony, and infer that sexual abuse did, in fact, occur.

### Assessing What Inferences, If Any, a Fact-Finder May Draw From the Disbelief of the Testimony of a Non-Party Witness

#### A. General Rule Governing a Fact-Finder's Disbelief of a Testifying Witness

We have already held that there is insufficient evidence to warrant the convictions of sexual abuse of a minor, because the State failed to corroborate Petitioner's extrajudicial confession. We feel it is necessary, however, to address the State's argument that Quentin's inability to recall details, such as whether he and Petitioner had a sexual relationship, is so "preposterous" that it allowed the jury to infer that the corpus delicti—a sexual act—did, in fact, occur. Such an inference, under the circumstances, is inconsistent with Maryland law.

We have often stated that "the fact-finder possesses the unique opportunity to view the evidence and to observe first-hand the demeanor and to assess the credibility of witnesses during their live testimony . . . ." *Walker v. State*, 432 Md. 587, 614, 69 A.3d 1066, 1082 (2013) (quoting *State v. Mayers*, 417 Md. 449, 466, 10 A.3d 782, 791 (2010)). A fact-finder "decides which evidence to accept and which to reject." *Jones v. State*, 343 Md. 448, 460, 682 A.2d 248, 254 (1996). "In its assessment of the credibility of witnesses," a fact-finder

21

is "entitled to accept—or reject—*all*, *part*, or *none* of the testimony of any witness, whether that testimony was or was not contradicted or corroborated by any other evidence." *Omayaka v. Omayaka*, 417 Md. 643, 659, 12 A.3d 96, 105 (2011) (emphasis in original).

We have long recognized the general rule that if a trier of fact disbelieves part or all of a witness's testimony, that discredited testimony is assigned no weight and plays no role in the consideration of the ultimate issue. In other words, disbelief is not evidence in and of itself. Therefore, a trier of fact cannot infer scienter, i.e., guilty knowledge, based solely on a defendant's denial of such knowledge. The part(s) of the testimony disbelieved must be discredited by the fact-finder. *See VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 711, 715 A.2d 188, 196 (1998) ("The jury's prerogative not to believe certain testimony, however, does not constitute affirmative evidence of the contrary."); *Attorney Grievance Comm'n v. Clements*, 319 Md. 289, 298, 572 A.2d 174, 179 (1990) ("A refusal to believe evidence of a respondent, however, does not, of itself, supply affirmative evidence of the dishonesty, fraud, deceit or misrepresentation charged."); *Carter v. State*, 10 Md. App. 50, 53, 267 A.2d 743, 745 (1970) ("Generally, disbelieving evidence provides no basis for finding evidence to the contrary . . . ."); *Hayette v. State*, 199 Md. 140, 145, 85 A.2d 790, 792 (1952) ("Ordinarily disbelieving evidence is not the same thing as finding evidence to the contrary.").

**B. Under a Narrow Exception, Additional Evidence May Permit an Inference of Scienter**

Many jurisdictions, including Maryland, recognize "the doctrine that disbelief of

testimony may not alone support a finding" in civil and criminal litigation.[9]  Olin Guy

Wellborn III, *Demeanor*, 76 CORNELL L. REV. 1075, 1102 (1991).  The application of the

"disbelief-is-not-evidence rule" is as follows:

> Assume that plaintiff must prove X.  No witness testifies X, nor does sufficient circumstantial evidence appear from which to infer X.  A witness who knows about X testifies "not X."  May the jury, on the basis of disbelief of the witness's testimony, find X?  Hundreds of cases say no.  Mere disbelief of testimony is not proof of facts of an opposite nature or tendency.

Wellborn III, *supra*, at 1101–02 (internal quotation marks and footnotes omitted).  The

disbelieved testimony carries no weight in the fact-finder's consideration of the issue(s)

before it.  The application of the rule has been consistent in many jurisdictions.

> But courts, including the Supreme Court, have generally been hostile to accepting the probative value of the antithesis inference, especially without other evidence in support of the party carrying the burden of proof.  For example, in 1891, the Court in *Bunt v. Sierra Butte Gold Mining Co.*[, 138 U.S. 483, 11 S. Ct. 464, 34 L. Ed. 1031 (1891),] held that a plaintiff could not meet his burden of proof by calling the defendant's employees as witnesses in the hope that the jury would disbelieve them.  Over the years, numerous cases have similarly rejected the antithesis inference as an adequate basis for submitting a case to the jury.  The First Circuit explained that the danger of permitting the antithesis inference was "obvious," as it would allow a plaintiff to prove its case solely through impeachment.

---

[9] There is not a uniform way in which federal and state courts refer to this doctrine.  "Judges frequently instruct juries that they may disbelieve a witness and thereby reject all or part of the witness's testimony.  This well-accepted premise, however, raises a more controversial question: whether a jury may go a step further and infer, from a belief that the witness's testimony is not true, that the truth is the opposite—or what one might call the 'antithesis inference' . . . . [I]n the last fifty years, [federal] courts have almost uniformly rejected the antithesis inference."  Andrew S. Pollis, *The Death of Inference*, 55 B.C. L. REV. 435, 461, 465 (2014) (footnotes omitted).

Pollis, *supra* note 9, at 461–62 (footnotes omitted). Because of these and other concerns, "[t]he extent of permissible inferences drawn from the presentation of particular false testimony is analogous to the weight given to a party's extrajudicial fabrication, suppression, spoliation, or subornation of evidence." Wellborn III, *supra*, at 1104. The general rule is designed to maintain effective appellate review.[10] Furthermore, it ensures the integrity of the trial process.[11]

There is a narrow exception to the general rule, but it requires that a permissible inference be drawn from other admissible evidence, and not just solely from the disbelief of a witness's testimony. "In appropriate circumstances" a permissible inference may be drawn "where the judgment of falsity reasonably derives not from demeanor, but from the testimonial content or other record evidence. To this extent, the doctrine that disbelief of testimony can never alone support a finding of fact should be qualified." Wellborn III,

---

[10] As Judge Learned Hand explained, if a fact-finder disbelieved testimony based solely on the witness's demeanor, meaningful appellate review would be negatively impacted. For example, "there could not be an effective appeal from the judge's disposition of a motion for a directed verdict. He, who has seen and heard the 'demeanor' evidence, may have been right or wrong in thinking that it gave rational support to a verdict; yet, since that evidence has disappeared, it will be impossible for an appellate court to say which he was. Thus, he would become the final arbiter in all cases where the evidence of witnesses present in court might be determinative." *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952).

[11] "The party with the burden of proof does not make an issue for the jury's determination by relying on the hope that the jury will not trust the credibility of the witnesses. If all of the witnesses deny that an event essential to the plaintiff's case occurred, the plaintiff cannot get to the jury simply because the jury might disbelieve these denials. There must be some affirmative evidence that the event in question actually occurred." 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2527 (3d ed. 2008).

*supra*, at 1104. As such, the exception is narrowly applied.[12]

In Maryland, we have at times referred to this exception as the "scienter exception," and we have often stated that, under certain circumstances, it may be utilized by a fact-finder when a party witness's testimony is disbelieved. The application of the scienter exception is limited, and permits a fact-finder to infer scienter from other sources of evidence, but *only* when a party witness's testimony is inherently improbable. The exception is applicable only when the following conditions are present: (1) a party witness, i.e., usually a defendant or co-defendant,[13] (2) the denial of scienter by a party witness, and (3) other additional evidence from which a fact-finder may rationally deduce that a party witness had scienter.[14] *See Carter*, 10 Md. App. at 53, 267 A.2d at 745 ("[T]here is an exception involving *scienter* or

---

[12] In federal courts, for example, the exception may apply in employment-discrimination suits and criminal cases. There, the trial court "impose[s] an important limitation: the plaintiff or prosecutor must still meet the initial burden of proof without the inference . . . . In criminal cases, a defendant who chooses to testify does not do so until after the prosecution has rested its case, meaning the prosecution has presumably adduced sufficient evidence without the defendant's testimony." Pollis, *supra* note 9, at 469.

[13] Under the scienter exception, when referring to a party witness, the term "party" is broader than the caption of the case. It refers not only to the parties of a case, but it also includes any co-defendants, because co-defendants are also accused of being a participant in the criminal activity at issue. For example, in *Larocca v. State*, 164 Md. App. 460, 883 A.2d 986 (2005), co-defendant Hinkle entered into a plea bargain with the State, and was then called to testify in his co-defendant's trial. Under the scienter exception, Hinkle was considered to be a party witness. The Court of Special Appeals held that the jury could infer the defendant's scienter, based on other additional supporting evidence, including Hinkle's "preposterous testimony." *Larocca*, 164 Md. App. at 485, 883 A.2d at 1001.

[14] "An inference is a factually permissible presumption." *State v. Smith*, 374 Md. 527, 538, 823 A.2d 664, 670 (2003) (quoting *Rowe v. State*, 41 Md. App. 641, 643, 398 A.2d 485, 487 (1979)).

guilty knowledge, *i.e.*, reasons for disbelieving a denial of *scienter* may provide a basis for finding *scienter*."). *See also Wild v. State*, 201 Md. 73, 77, 92 A.2d 759, 761 (1952) ("[I]t is nevertheless clear that knowledge may be inferred from circumstances, even where there is positive denial."); *Ferraro v. State*, 200 Md. 274, 278, 89 A.2d 628, 630 (1952) ("Several times recently we have remarked that reason for disbelieving evidence denying scienter may also justify finding scienter."); *Hayette*, 199 Md. at 145, 85 A.2d at 792 ("But on questions of scienter[,] reason for disbelieving evidence denying scienter may also justify finding scienter.").

In *Carter*, the Court of Special Appeals further explained the role of the scienter exception within our criminal justice system:

> **The rule concerning finding *scienter* in no way affects other aspects of criminal law. The State still has the burden of proof**; and the defendant is still presumed innocent and does not have to prove his innocence. He may remain silent without comment on that silence. The defendant may, if he wishes, testify in his defense. If he does so, ordinarily, disbelieving his testimony is not the same as finding positive evidence to the contrary, except the permissibility of finding *scienter* based on the defendant's denial of *scienter*.
>
> **In order to find a defendant's story so inherently improbable as to justify finding *scienter* from defendant's denial, there must be some additional circumstance establishing the inherent improbability of defendant's denial.** If defendant merely denied all guilty knowledge and no evidence, from either the defense or the State, put that denial in the position of being more than merely disbelievable, a finding of *scienter* from such a denial will not be allowed to stand. Since the finding of *scienter* from a denial of it is a concept of some subtlety, it must appear in the record what circumstances the trial court relied upon in elevating a denial by the defendant from being merely disbelievable to the status of justifying a finding of *scienter*.

10 Md. App. at 54, 267 A.2d at 745–46 (emphasis added).

In the instant case, we reject the State's attempt to expand the exception to also apply in cases involving a testifying "non-neutral" non-party witness. The State did not cite to, nor could we find, a case where the scienter exception also applied to the disbelief of a non-party witness's testimony. The reason is self-evident: "The rule concerning finding *scienter* in no way affects other aspects of criminal law." *Carter*, 10 Md. App. at 54, 267 A.2d at 745. "It is well settled that the jury's disbelief of a non-party witness does not permit the jury to find that the opposite of what the witness testified to is true." *King v. State*, 407 Md. 682, 710, 967 A.2d 790, 807 (2009) (Murphy, J., dissenting). In his treatise, Judge Joseph F. Murphy explains, in pertinent part:

> Disbelief of a witness does not ordinarily permit the factfinder to conclude that the opposite of what the witness testified to is true. For example, if a nonparty witness testifies that the light was green for northbound traffic, but the jurors are persuaded that this testimony is false, they cannot turn their disbelief into a finding that the light was actually red for northbound traffic. If the witness is not believed on that point, the jurors "erase the blackboard."
>
> **Disbelief of a party, however, is sometimes treated differently. The finding that a party has deliberately furnished false information permits the inference that the party did so because he knew that his cause should not prevail.** The criminal defendant who furnishes false exculpatory information to investigating officers or who has threatened the other side's witnesses is treated differently from the non-party witness whose testimony is simply not given any credit. Under certain circumstances, false information can be treated as an admission by conduct that the opposing party's case is truthful and would prevail but for the falsity.

Joseph F. Murphy, Jr., MARYLAND EVIDENCE HANDBOOK § 409, at 167 (4th ed. 2010) (internal citations omitted) (emphasis added). This explanation conforms with decades of

Maryland case law. We hold that an expansion of the scienter exception is unnecessary and unwarranted. The State ignores evidentiary tools, such as the turncoat witness rule,[15] that are already at its disposal to prove its case in chief. The burden remains with the State to present the requisite substantive evidence, and here it failed to meet that burden.

The scienter exception does not apply, because the facts in the instant case do not satisfy the requirements of the exception. First, the testimony at issue is that of a non-party witness, i.e., the alleged victim, rather than that of a party witness. Second, Petitioner did not deny scienter; she confessed to having sexual intercourse with her stepson five to ten times. Third, other than the extrajudicial confession, no additional evidence was presented to allow the jury to permissibly infer that sexual act(s) occurred between Petitioner and the alleged victim. Petitioner confessed to sexual abuse of a minor, but the State failed to produce *any*

---

[15] At common law, a witness's prior inconsistent statement could only be admissible for impeachment purposes. In *Nance v. State*, we expanded the rule, and held that such a statement could also be admissible as substantive evidence. 331 Md. 549, 629 A.2d 633 (1993). "We hold that the factual portion of an inconsistent out-of-court statement is sufficiently trustworthy to be offered as substantive evidence of guilt when the statement is based on the declarant's own knowledge of the facts, is reduced to writing and signed or otherwise adopted by him, and he is subject to cross-examination at the trial where the prior statement is introduced." *Nance*, 331 Md. at 569, 629 A.2d at 643 (footnote omitted). This ruling has been codified in Md. Rule 5-802.1: "The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule: (a) A statement that is inconsistent with the declarant's testimony, if the statement was (1) given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition; (2) reduced to writing and was signed by the declarant; or (3) recorded in substantially verbatim fashion by stenographic or electronic means contemporaneously with the making of the statement . . . ."

evidence to adequately corroborate the crime. Therefore, the general rule would apply in the absence of the corroboration rule. If the jury disbelieved the alleged victim's testimony, the fact-finder was obliged to discredit the part(s) disbelieved.

In sum, we reject the State's argument, and conclude that it amounts to no more than a misapplication of the scienter exception. We also distinguish *Larocca v. State*, 164 Md. App. 460, 883 A.2d 986 (2005) from the case *sub judice*, because the issue there did not involve the application of the corroboration rule. Additionally, that case involved the testimony of a co-defendant who the State impeached using the co-defendant's prior inconsistent statement.

We note that in *Larocca* the Court of Special Appeals, in dicta, drew a distinction between a neutral non-party witness and a non-neutral non-party witness.[16] As stated above, the applicability of the scienter exception turns on the status of the witness and whether the witness is a party or non-party. To the extent the Court of Special Appeals in *Larocca* suggested that the applicability of the scienter exception is contingent on whether the witness is neutral or non-neutral, we disavow that distinction to the degree it conflicts with the general rule and the scienter exception as articulated herein.

## CONCLUSION

Accordingly, we reverse the judgment of the Court of Special Appeals. Quentin's

---

[16] "In addition, disbelief of Hinkle . . . is hardly the same as disbelief of a neutral nonparty witness, whose testimony, when disbelieved, is merely erased from the fact-finder's mind." *Larocca*, 164 Md. App. at 485, 883 A.2d at 1001.

testimony did not relate to or establish the corpus delicti of sexual abuse of a minor. Because the State did not produce independent evidence to corroborate the extrajudicial confession, the rule of corroboration was not satisfied, as a matter of law. The evidence was legally insufficient to warrant a jury verdict.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY. RESPONDENT TO PAY THE COSTS.**

30

Circuit Court for Washington County
Case No. 21-K-13-048610

Argued: January 8, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 49

September Term, 2015

_____

ANGELA ANN GRIMM

v.

STATE OF MARYLAND

_____

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

_____

Dissenting Opinion by Watts, J.

_____

Filed: May 4, 2016

*Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of the majority opinion.

Respectfully, I dissent. I would hold that, under this particular case's circumstances, a witness's extraordinary lack of credibility was sufficient to serve as corroboration of the defendant's confession.

In Jones v. State, 440 Md. 450, 454-55, 103 A.3d 586, 589 (2014), this Court explained the standard of review for challenges to sufficiency of the evidence as follows:

> Evidence is sufficient to support a conviction where, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In determining whether evidence was sufficient to support a conviction, an appellate court defers to any possible reasonable inferences that the trier of fact could have drawn from the evidence.

(Brackets, citations, ellipsis, emphasis, and internal quotation marks omitted).

In Miller v. State, 380 Md. 1, 46, 843 A.2d 803, 829 (2004), this Court explained what is sometimes known as the "*corpus delicti* rule" as follows:

> [A] criminal conviction cannot rest solely on an uncorroborated confession. . . . **[I]t is not necessary for the corroborating evidence to be full and complete[,] or that it establish the truth of the *corpus delicti* either beyond a reasonable doubt or [even] by a [mere] preponderance of proof. The supporting evidence . . . may be small in amount**[,] and is sufficient to establish the *corpus delicti* if, when considered in connection with the confession or admission, it satisfies the trier of fact[] beyond a reasonable doubt that the offense charged was committed and that the [defendant] committed it.

(Emphasis added) (citations and internal quotation marks omitted).

Viewing the evidence in the light most favorable to the State, I would conclude that the evidence was sufficient for the jury to find that the alleged victim, Quentin, was lying when he testified that he could not remember whether he had had sexual intercourse with the defendant, Angela Ann Grimm ("Grimm"), Petitioner. Absent evidence of a faulty

memory or mind-altering substances, no rational twenty-year-old could possibly forget whether he or she had had sexual intercourse with a stepparent within the previous five years.[1] Indeed, it strains all credulity that Quentin could remember exchanging messages with Grimm on Facebook, and could even remember Grimm's username on Facebook ("Faith"), yet could not remember whether he had had sexual intercourse with Grimm.

After the prosecutor asked the simple question "How would you describe your relationship with [] Grimm?", Quentin repeated what he had already said four times: "I don't remember." Quentin's answer was not only non-responsive and nonsensical, but also demonstrably false; after the prosecutor asked "What's your relationship with [] Grimm like today?", Quentin replied: "Mother." The jury could easily reasonably infer that Quentin was reflexively falsely responding "I don't remember" to almost every question, including questions about whether he had had sexual intercourse with Grimm. In short, I wholeheartedly agree with the Court of Special Appeals that Quentin's testimony about his lack of memory was "preposterous."

Having concluded that the evidence was more than sufficient to demonstrate that Quentin was lying when he testified that he could not remember whether he had had sexual intercourse with Grimm, I would hold that, as a matter of law, Quentin's false testimony could serve as corroboration of Grimm's confession to having had sexual intercourse with Quentin. Again, Quentin made the preposterous claim that he could not remember whether

---

[1]Grimm confessed to a detective that she had begun a sexual relationship with Quentin in 2009, and that the sexual relationship ended in either 2012 or 2013. Quentin testified in 2014.

he had had sexual intercourse with Grimm. Given that Quentin would have certainly denied the allegation if it were false, a reasonable inference is that the allegation was true.

The Majority states that "disbelief is not evidence in and of itself" and cites: Hayette v. State, 199 Md. 140, 145, 85 A.2d 790, 792 (1952), a sixty-four-year-old case; Carter v. State, 10 Md. App. 50, 53, 267 A.2d 743, 745 (1970), a forty-six-year-old case; Attorney Grievance Comm'n v. Clements, 319 Md. 289, 298, 572 A.2d 174, 179 (1990), an attorney discipline case; and VF Corp. v. Wrexham Aviation Corp., 350 Md. 693, 711, 715 A.2d 188, 196-97 (1998), a civil case.[2] See Maj. Slip Op. at 22-23; see also In re Gloria H., 410 Md. 562, 579, 979 A.2d 710, 719 (2009) ("For the reasons stated in *VF Corp.*[] and *Clements*, [] the [juvenile c]ourt erred in drawing th[e] impermissible inference" that the

---

[2]In VF Corp., 350 Md. at 703, 715 A.2d at 192, this Court held that "there was insufficient evidence of fraud for [a fraud] count to have been submitted to [a] jury[.]" In this Court, in arguing that there was sufficient evidence of fraud, the plaintiff conceded that there was no direct evidence that the defendant's employee knew that the statements that the defendant's employee had made were false. See id. at 711, 715 A.2d at 196. However, the plaintiff contended "that the jury 'reasonably disbelieved [the defendant's employee] when he denied that he knew [that] his representations were false.'" Id. at 711, 715 A.2d at 196. This Court rejected the plaintiff's contention, stating:

> The jury's prerogative not to believe certain testimony, however, does not constitute affirmative evidence of the contrary. As . . . pointed out . . . in []*Clements*, 319 Md. [at] 298, 572 A.2d [at] 179[], "[a] refusal to believe evidence of a [defendant], however, does not, of itself, supply affirmative evidence of the dishonesty, fraud, deceit, or misrepresentation charged. The issue is whether [the plaintiff] presented sufficient evidence of the charge to meet the clear and convincing standard of proof."

VF Corp., 350 Md. at 711, 715 A.2d at 196-97 (some alterations in original).

opposite of the juvenile's mother's testimony was true.).[3]

None of these five cases applies here. Both <u>Hayette</u> and <u>Carter</u> concerned the issue of whether an inference from a trier of fact's disbelief of a witness can establish *scienter*, or the mental element of a crime.[4] See <u>Hayette</u>, 199 Md. at 145, 85 A.2d at 792 ("Ordinarily[,] disbelieving evidence is not the same thing as finding evidence to the contrary. But[,] on questions of scienter[,] reason for disbelieving evidence denying scienter may also justify finding scienter." (Citation omitted)); <u>Carter</u>, 10 Md. App. at 53, 267 A.2d at 745 ("Generally, disbelieving evidence provides no basis for finding evidence to the contrary; however, there is an exception involving scienter or guilty knowledge, i.[]e., reasons for disbelieving a denial of scienter may provide a basis for finding scienter." (Citations omitted)). By contrast, this case concerns the issue of whether an inference from

---

[3]In <u>Gloria H.</u>, 410 Md. at 565, 979 A.2d at 712, this Court held that a juvenile's mother was "entitled to a new trial on the issue of whether she was 'involved' in" her daughter's truancy. In the juvenile court, the juvenile and her mother "testified that, although [the juvenile] arrived at her school on a regular basis, [the juvenile] rarely attended the classes to which she was assigned." <u>Id.</u> at 569, 979 A.2d at 714 (emphasis omitted). If believed, the testimony of the juvenile and her mother would have established that the juvenile's mother was not involved in her daughter's truancy, because the juvenile's mother had done all that she had needed to do—namely, simply ensure that her daughter arrived at school. However, the juvenile court found that, "because [the juvenile's mother]'s 'incomprehensible' testimony lacked credibility, the opposite of her exculpatory testimony must [have] be[en] true." <u>Id.</u> at 579, 979 A.2d at 719. This Court concluded that, "[f]or the reasons stated in *VF Corp.*[] and *Clements*, [] the [juvenile c]ourt erred in drawing th[e] impermissible inference" that the opposite of the juvenile's mother's testimony was true. <u>Gloria H.</u>, 410 Md. at 579, 979 A.2d at 719.
[4]"*Mens rea* [is] the guilty mind or mental state accompanying a forbidden act. . . . [*M*]*ens rea* [is] interchangeable with the terms 'guilty mind,' '*scienter*[,]' and 'criminal intent[.]'" <u>State Cent. Collection Unit v. Jordan</u>, 405 Md. 420, 425 n.7, 952 A.2d 266, 269 n.7 (2008) (citations and some internal quotation marks omitted).

a trier of fact's disbelief of a witness can serve as corroboration of a defendant's confession. In other words, this case involves corroboration of the *actus reus*, not proof of the *mens rea*.[5]

In all three of the other cases—VF Corp., Clements, and Gloria H.—this Court concluded that a party with the burden of proof could not rely on a fact-finder's disbelief of a witness's testimony **alone** to establish the party's case. Specifically, in VF Corp., 350 Md. at 711, 715 A.2d at 196, without any direct evidence of fraud, the plaintiff relied on the jury's discrediting the defendant's employee's testimony that he did not know that "his representations were false." In Clements, 319 Md. at 298, 572 A.2d at 179, in an attempt to establish dishonesty, fraud, deceit, or misrepresentation, the Attorney Grievance Commission relied on the hearing judge's discrediting the respondent's testimony. And, in Gloria H., 410 Md. at 579, 979 A.2d at 719, the State had no direct evidence of the juvenile's mother's involvement in the juvenile's truancy, and the juvenile court based its verdict in the State's favor on the circumstance that the juvenile court discredited the juvenile's mother's testimony.

The lesson of VF Corp., Clements, and Gloria H.—that a party with the burden of proof could not rely on a fact-finder's disbelief of a witness's testimony **alone** to establish the party's case—does not apply where, as here, the issue is whether there was corroboration of a confession. By definition, in such a case, the party with the burden of

---

[5]"[G]enerally[,] there are two components of every crime[:] the *actus reus*[,] or guilty act[,] and the *mens rea*[,] or the guilty mind[.]" Lowery v. State, 430 Md. 477, 499, 61 A.3d 794, 807 (2013) (citation omitted).

proof—namely, the State—is not relying on a fact-finder's disbelief of a witness's testimony **alone** to establish the State's case. In this case, the State offered not only evidence of Grimm's confession, but also independent evidence, in the form of Quentin's testimony, that, in relation to Quentin, Grimm was both a "family member" and a "household member," as those terms are defined by Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CR") § 3-601(a)(3) ("'Family member' means a relative of a minor by blood, adoption, or marriage.") and CR § 3-601(a)(4) ("'Household member' means a person who lives with or is a regular presence in a home of a minor at the time of the alleged abuse."), respectively. The only issue in a case such as this is whether there is corroboration of the confession—and that corroboration "may be small in amount" and need not "be full and complete or . . . establish the truth of the *corpus delicti*[, not even] by a [mere] preponderance of proof." Miller, 380 Md. at 46, 843 A.2d at 829 (citations and internal quotation marks omitted).

In accordance with the easy-to-meet standard of proof for corroboration of confessions, and in accordance with viewing the evidence in the light most favorable to the State, I would hold that evidence of a witness's extraordinary lack of credibility may serve as corroboration of a confession. Examining this case's circumstances, I would conclude that Quentin's extraordinary dishonesty—in the form of testifying that he could not recall whether he had had sexual intercourse with Grimm, a woman with whom he has a mother-son relationship—was sufficient to corroborate Grimm's confession that she had had sexual intercourse with Quentin.

For the above reasons, respectfully, I dissent.